HUANG INTERNATIONAL, INC.,
Huang-Lo Enterprises, Inc.,
Appellants (Defendants),

United Savings Bank of
Wyoming, (Defendant),

v.

FOOSE CONSTRUCTION COMPANY,
Appellee (Plaintiff),

Western Sheet Metal and Roofing
Company, Inc., (Plaintiff).

No. 86–247.

Supreme Court of Wyoming.

March 27, 1987.

John W. Pattno of Pattno-Smith Associates, Cheyenne, for appellants.

Blair J. Trautwein of Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

MACY, Justice.

Foose Construction Company and Western Sheet Metal and Roofing Company, Inc. brought an action against Huang International, Inc., Huang-Lo Enterprises, Inc., and United Savings Bank of Wyoming. In their complaint against Huang, Foose and Western Sheet Metal alleged breach of contract and demanded payment of the amounts due under the contract or authorization to foreclose their liens on Huang's property in execution of the judgment. They also requested an order adjudging their liens to have priority over mortgages on the property held by the bank.

Prior to trial, Western Sheet Metal settled its claim against Huang. A trial to the district court was held on Foose's claims, and judgment was entered against Huang in the amount of $31,074.75. The judgment authorized Foose to foreclose upon its lien if necessary in execution of the judgment. The judgment also recited that Foose's lien had priority over the bank's construction money mortgage but not over the bank's purchase money mortgage. Huang now appeals to this Court from the district court's judgment.

We affirm.

Huang makes the following claims before this Court:

"1. Whether the Trial Court [erred] in granting attorneys fees to Plaintiff;

"2. Whether the Trial Court [erred] in finding that extra items in construction were outside the scope of the contract

and not required to be in writing as provided by the contract;

"3. Whether the Trial Court [erred] in finding that the Defendant agreed to pay for extra items either by words or conduct, which was contrary to the contract's requirement that extras are to be in writing; and

"4. Whether the Trial Court [erred] in finding that some extras furnished by contract were not a voluntary act when the extras were covered by the terms of the contract."

Foose restates the issues as follows:

"1. WHETHER THE COURT ERRED IN FINDING $7,132 AS COMPENSATION FOR EXTRA WORK OUTSIDE THE SCOPE OF THE ORIGINAL CONTRACT?

"2. WHETHER THE COURT ERRED IN ITS AWARD OF ATTORNEY FEES TO FOOSE CONSTRUCTION?"

On August 20, 1984, Huang entered into a written agreement with Foose for the construction of a Chinese restaurant in Cheyenne, Wyoming. Thereafter, on August 30, 1984, the parties entered into a second written agreement (Rider "A") which was incorporated by reference into the original agreement. The agreements provided that Foose would reconstruct the outside of an existing building in accordance with drawings and specifications prepared for Huang by Richard Porter, a Cheyenne architectural designer. The agreements also provided that the outside work would be completed in 1984 to enable interior construction to be completed during the winter months. Under the terms of the agreements, the cost of the work was not to exceed $200,000; in the event it did exceed that amount, 50% of the excess cost was to be deducted from Foose's fee.

Construction began in August 1984. By November, the cost of construction had exceeded $200,000. In an effort to complete construction by the first of the year, Huang and Foose entered into a third written agreement which provided that Foose would perform additional work at a cost of $47,000. Thereafter, Foose completed the work specified in the third agreement in

addition to work not covered by any of the written agreements. When Foose sought payment for the work completed, Huang refused to pay the total amount, claiming that Foose had performed work beyond the scope of the written agreements. Efforts to settle the dispute failed, and Foose brought suit against Huang on June 14, 1985.

In its complaint, Foose alleged that all of the work was performed pursuant to either written or oral agreements with Huang. In response, Huang filed an answer and counterclaim alleging that Foose did not complete the contract, performed the work in an unsatisfactory manner, and charged Huang for work not required by the written agreements. Foose answered and raised the affirmative defense that Huang waived the terms of the written agreements by its own conduct.

At trial, Foose introduced evidence of 50 "extras" allegedly performed pursuant to oral agreements entered into with Huang after performance of the written agreements. Upon considering all of the evidence and testimony presented, the district court found that Foose proved by clear and convincing evidence that Huang approved extras valued at $7,171. In its decision letter, the court stated that Foose

"was entitled to the sum of $200,000.00 on the original contract, the further sum of $44,500.00 on the supplemental contract, and the additional sum of $7,171.00 for extras as specifically found above. [Foose] therefore is entitled to a total of $251,671.00. [Foose] acknowledges having received payments totaling $231,-389.00 which leaves a balance still due from [Huang] to [Foose] of $20,282.00. [Foose] further has agreed to give credit to [Huang] for the sum of $425.00 for a desk converted by [Foose] and belonging to [Huang]. This leaves the net recovery due to [Foose] from [Huang] of $19,-857.00."

The court also awarded attorney's fees to Foose in the amount of $11,217.75.

I

As indicated above, on appeal to this Court Huang sets forth three claims with

respect to the district court's award for extra work performed by Foose beyond the scope of the parties' written agreements. Because each of the claims in essence questions whether the district court correctly found Huang liable for the cost of that work, we will address the claims together.

The original agreement executed by Huang and Foose contained the following provisions:

"If the final working drawings and specifications have not been completed, the Contractor, the Architect/Engineer and Owner will work closely together to monitor the design so as to assure the project can be constructed within the Guaranteed Maximum Price and in accordance with the exhibits attached hereto. As these final plans and specifications are being completed, the Contractor will keep the Owner apprised of any changes in the Guaranteed Maximum Price caused by changes in the scope of the project which the Owner may request.

\*    \*    \*    \*    \*    \*

"5.2 The Owner shall designate a person who shall be fully acquainted with the scope of the Work, and has authority to approve changes in the scope of the Work, render decisions promptly, and furnish information expeditiously.

\*    \*    \*    \*    \*    \*

"9.1 The Owner may make Changes in the Work in accordance with the General Conditions insofar as they are consistent with this Agreement. The Contractor shall be reimbursed for Changes in the Work on the basis of Cost of the Work as defined in Article 10 of this Agreement. "9.2 *If changes in the Work are authorized in writing by the Owner, their estimated value shall be added to or deducted from the Guaranteed Maximum Price.* In arriving at the gross estimated amount of such changes involving extra work, the fee to the Contractor shall be decreased by _____ percent of the estimated cost of the additional Work (including additional design costs) to cover his main office overhead and profit. In the event of authorized credit change orders, they shall be made

at the estimated cost of the work with no change in Fee.

\*    \*    \*    \*    \*    \*

"9.4 If Changes in the Work are required to comply with local, state or federal laws, rules, regulations or requirements which are not applicable at the time of the execution of this agreement, the Guaranteed Maximum Price shall be adjusted to reflect the cost of such changes. Such changes shall include, by way of illustration and not limitation, compliance with Environmental Protection Agency rules and regulations, Air and Water Pollution Control Agency regulations and other agencies and authorities." (Emphasis added.)

The district court found, and the parties are in agreement, that the original drawings and specifications were not intended to be complete and final but were intended merely to satisfy the basic requirements for obtaining building permits. The parties clearly contemplated that changes in the scope of the work would occur. Yet, Huang contends that it is not obligated to pay for the changes which occurred after the November written agreement because they were performed without prior written authorization in violation of the express terms of the written agreement.

"Generally, the stipulation in a private building or construction contract \* \* \* that alterations or extras must be ordered in writing is valid and binding upon the parties, and therefore, so long as such a provision remains in effect no recovery can be had for alterations or extras done without a written order in compliance therewith." Annot., 2 A.L. R.3d 620, 626 (1965).

However,

"[a]ll the cases agree that a stipulation requiring a written order for extras or alterations is not applicable to work done in order to comply with an order of a public building inspector." Id. at 643.

In addition, a provision requiring written authorization for extras

"can be avoided by the parties to the contract where their words, acts, or conduct would amount to a waiver, modifica-

tion, rescission, abrogation, or abandonment of such provision, or where the owner * * * by his conduct is estopped to rely on it." Id. at 627.

This Court long ago recognized the validity of the above-stated rule. In *Snowball v. Maney Bros. & Co.*, 39 Wyo. 84, 270 P. 167, 61 A.L.R. 199 (1928), we said that a provision of a highway construction contract requiring change orders to be in writing could be waived or modified by either express or implied oral contract.

In the present case, the evidence at trial showed that the drawings and specifications upon which the $200,000 estimate was based were not complete. Richard Porter testified that he provided Huang with estimates of $23,000 and $15,000 to prepare complete drawings and specifications for the project. Both estimates were rejected by Huang as too high, and the parties agreed that Porter would prepare only such drawings as were sufficient to enable Huang to obtain building permits. The drawings were to be finalized as construction progressed.

■ The evidence at trial also clearly showed that, as the end of the year grew closer and problems associated with the project arose, Huang relied increasingly on Foose for work both outside and inside the building. Despite the terms of the original agreement which contemplated that Foose would construct the shell of the building and Huang would complete the interior, the record demonstrates that Huang called upon Foose to assist with a number of projects inside the building. These projects were requested and undertaken without written change orders. The habitual disregard of a provision which requires that change orders for extras be in writing, if determinable as a matter of fact, can amount to a waiver of the contractual requirement. *Harrington v. McCarthy*, 91 Idaho 307, 420 P.2d 790 (1966); *Arc & Gas Welder Associates, Inc. v. Green Fuel Economizer Co.*, 285 F.2d 863 (4th Cir.1960), cert. denied 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). It is apparent from the record that the parties ignored the writing requirement and frequently orally agreed to "extras." The record also clearly demonstrates that the provision requiring writ-

ten approval of all changes in the work was waived by the words and conduct of the parties.

Of the 50 items of extra work claimed by Foose, the district court found Huang liable for payment for the following:

1. Loading and unloading equipment and materials belonging to Huang—$300;

2. Reframing walls between kitchen and dining room—$400;

3. Reframing walls for three recessed areas for framed art work—$450;

4. Removing existing teller line counter and building liquor dispensing room —$3,600;

5. Four solid core doors—$1,800;

6. Labor and materials for wood table —$540;

7. Fuel bills—$381;

8. Hats from American Culinary Supply—$26.70; and

9. C.O.D. charges for materials ordered by Huang—$158 and $301.96.

At trial, the president of Huang International, Inc., Walter Huang, testified that the $300 for loading and unloading equipment was correctly charged to Huang. He also testified that he asked Foose to construct a wood table after the last written agreement was executed. In addition, Mr. Huang testified that the fuel bills and hats were correctly charged to Huang. Several witnesses, including Mr. Huang, testified that the liquor dispensing room was constructed at Huang's request in order to satisfy the city requirement for obtaining a liquor license. Dave Foose, owner of Foose Construction Company, testified that all of the extras for which payment was sought were performed at the request of Huang and were not within the scope of the written agreements. In addition, Foose introduced each set of drawings and specifications reflecting the changes in the project as construction progressed. Foose also introduced copies of the billings sent to Huang for the extra work performed. Using photographs taken just prior to trial of the walls between the kitchen and dining room and the recessed areas for art work, Foose pointed out the changes which were made after the last set of drawings was completed on October 10, 1984. Foose also

used photographs to demonstrate the location of the doors added after the last drawings pursuant to Huang's oral request. Other witnesses testified on behalf of Foose that Huang was extremely eager to complete construction and open the restaurant by the first of the year, that Huang urged them to get the work done, and that Huang indicated written approval of changes was unnecessary.

"As a reviewing court, we assume the evidence of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give the evidence of the successful party every favorable inference which may reasonably be drawn from it." *DeJulio v. Foster,* Wyo., 715 P.2d 182, 185 (1986).

"Where evidence justifies either of two reasonable inferences, the trier of fact is allowed to determine which, if either, of the two inferences is more reasonable or probable. The trial court is in a far better position to judge the demeanor, truth and veracity of a witness; therefore, we give considerable deference to the court's findings regarding such witness.' " *Ott v. Rissler & McMurry Co.,* Wyo., 726 P.2d 1079, 1080 (1986), quoting *Smith v. State,* Wyo., 714 P.2d 1201, 1204 (1986) (citations omitted).

▮ The district court heard the testimony of the witnesses, considered the evidence, and found that Foose carried its burden of proving by clear and convincing evidence that Huang modified the terms of the written agreements by orally approving extra work on the project. We are not willing to say that the district court's finding is incorrect as a matter of law. Support can be found in the record for the factual conclusion that the parties habitually disregarded the written change order requirement and that the requirement consequently was waived. That we might have reached a different result is not a sufficient reason for overturning the fact finder's judgment.

## II

Huang also contends that the district court erred in awarding attorney's fees to Foose.

Rider "A", which was incorporated by reference into the original contract, provides:

"ATTORNEY FEES AND COSTS. In the event of any default of the terms or conditions of the Contract Documents by the parties hereto, the defaulting party shall be responsible for the payment of the nondefaulting party's reasonable attorney fees and court costs incurred in curing any such default, whether or not litigation becomes necessary."

▮ Huang does not contend that attorney's fees were not available under the terms of the contract, nor does it object to the amount awarded. Rather, Huang contends that the district court improperly awarded attorney's fees to Foose in that Foose, not Huang, was the defaulting party, and consequently Foose was responsible for payment of Huang's attorney's fees. More specifically, Huang contends that Foose defaulted on the contract by failing to complete the landscaping required by the third written agreement and, therefore, that Huang is entitled to attorney's fees.

The district court found that Huang defaulted on the contract by failing to pay for extra work performed by Foose pursuant to the parties' agreements. The district court also found that

"after the controversy arose between the parties as to the amounts remaining due, [Foose] did not complete the landscaping for which the allowance of $2,500.00 was made in the supplemental agreement."

Upon Huang's failure to pay the amount due in accordance with the parties' agreements, further performance by Foose was excused. 17 Am.Jur.2d, Contracts § 365 (1964). Thus, the district court acted properly in reducing Huang's liability by the amount for the landscaping work and in awarding Foose reasonable attorney's fees.

Affirmed.