EMMETT RANCH, INC., a Wyoming corporation, Appellant (Plaintiff),

v.

GOLDMARK ENGINEERING, INC., a Wyoming corporation; and Unicorn Drilling, Inc., a Wyoming corporation, Appellees (Defendants).

No. 94–291.

Supreme Court of Wyoming.

Dec. 15, 1995.

Thomas F. Reese of Brown & Drew, Casper, representing Appellant.

Steven R. Cranfill of McCarty, Cranfill & Sommers, Cody, representing Appellee, Goldmark Engineering, Inc.

Jody M. Vannoy and Robert P. Golden, Cody, representing Appellee, Unicorn Drilling, Inc.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Appellant asks this court to review a district court's interpretation of a Surface and Damage Agreement executed between a

rancher and an oil company. The district court granted summary judgment in favor of the oil company, regarding the continued validity of the Surface and Damage Agreement, and postponed the trial on certain claims raised by the rancher regarding alleged breaches of that agreement.

We affirm.

## I.  ISSUES

Appellant, Emmett Ranch, Inc., states the issues on appeal:

1. Is the defendant Unicorn bound by its admissions that the Surface Damage Agreement terminated?

2. Pursuant to Wyoming Statute Annotated § 3[4]–1–141 is the Surface Damage Agreement of no force and effect?

3. Is there a material question of fact as to whether or not the defendant Goldmark terminated production and drilling activities on the subject property?

4. Were there multiple breaches of the Surface Damage Agreement by the defendant resulting in damage?

5. Is there sufficient evidence to allow the issue of punitive damages to be heard by the jury?

Appellee, Goldmark Engineering, Inc., states the issues:

1. Did the district court properly hold that the Surface and Damage Agreement is still in full force and effect?

   A. Did the district court properly hold that it could not consider, in ruling on a motion for summary judgment, the conclusions of law sought by appellant's request for admissions?

   B. Did the district court properly hold that pursuant to Wyoming Statute Annotated § 3[4]–1–141 the Surface and Damage Agreement is still in full force and effect?

   C. Did the district court properly hold, as a matter of law, that there was not a hiatus of six months or more in production activity?

   D. Did the district court properly hold that there was no material question of fact regarding alleged breaches of the Surface and Damage Agreement?

2. Did the district court properly grant summary judgment regarding punitive damages?

Appellee, Unicorn Drilling, Inc., reiterates the issues:

1. Did the district court correctly rule that the defendant Unicorn is not bound by its failure to respond to plaintiff Emmett's request for admissions?

2. Did the district court correctly rule that Wyoming Statute Annotated § 3[4]–1–141 does not negate the Surface and Damage Agreement?

3. Did the district court correctly rule that there was never a six-month hiatus in production activity on the subject property?

4. Was there sufficient undisputed and admissible evidence presented by the appellant to show there were multiple breaches of the Surface and Damage Agreement by the appellees resulting in damage?

5. Did the district court correctly rule that the appellant is not entitled to punitive damages in this case?

## II.  FACTS

Emmett Ranch, Inc., by and through W. Ray Emmett (Emmett), entered into a Surface and Damage Agreement in 1984 with Goldmark Engineering, Inc. (Goldmark). The Surface and Damage Agreement allowed Goldmark access to Emmett's property for the purpose of drilling and producing oil and gas. The well was directionally drilled from Emmett's property to access oil and gas located on federal lease lands adjacent to Emmett's property. On January 29, 1991, a pump unit failed and the well was shut in on February 1, 1991. Following the failure of the pump unit, Emmett indicated a desire to acquire a working interest in the well.

Unicorn Drilling, Inc. (Unicorn) replaced Goldmark as the operator and ultimately acquired a working interest in the well and assigned portions of that working interest to several new owners. Emmett was not

among the new owners. On October 1, 1991, the Bureau of Land Management approved the assignment of the federal lease from Goldmark to Unicorn. On November 15, 1991, the well was returned to production. Emmett believed, for various reasons, that the Surface and Damage Agreement was terminated and filed suit. Motions for summary judgment were filed by all parties and the district court granted the motions of Unicorn and Goldmark as those motions pertained to the continued validity of the Surface and Damage Agreement. At Emmett's request, the district court postponed the trial on the remaining issues to enable Emmett to file this appeal.

## III. DISCUSSION

■ Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there are no genuine issues of material fact. *Pete Lien & Sons, Inc. v. Ellsworth Peck Const. Co.*, 896 P.2d 761, 762 (Wyo.1995). Interpretation of an unambiguous contract presents a question of law. *Id.* Since we conclude that there are no material facts at issue in this case, summary judgment is appropriate and we will consider the remaining question of whether the district court's rulings were correct as a matter of law. Those decisions, which are being reviewed *de novo*, will be granted no special deference. *Id.*

Emmett's first three arguments attack the validity of the Surface and Damage Agreement which he drafted. The Surface and Damage Agreement gave Goldmark, Unicorn's predecessor in interest, access to Emmett's property for the purpose of drilling and producing oil and gas. Emmett argues that the Surface and Damage Agreement is no longer in effect because (1) Unicorn admitted during discovery that the Surface and Damage Agreement is no longer in effect; (2) the easement articulated in the Surface and Damage Agreement is no longer in effect because it was not recorded within one year of its execution as required under Wyo.Stat. § 34–1–141(c) (1990); (3) the Surface and Damage Agreement terminated pursuant to its own cessation of production clause since the well was out of production for more than

six continuous months; and (4) multiple breaches of the Surface and Damage Agreement by Goldmark and Unicorn have resulted in the termination of the agreement. We are not persuaded by Emmett's arguments. We agree with the district court that the Surface and Damage Agreement remains in full force and effect.

■ Our analysis will address Emmett's first three arguments in reverse order. Emmett argues that since the pump unit on the well failed on January 29, 1991 and production was not resumed until November 15, 1991, the Surface and Damage Agreement terminated pursuant to its own cessation of production clause, which states: "All clean up and restoration requirements shall be completed by Operator within six (6) months after termination of drilling or production activities at any well site or right-of-way." Emmett contends that since the well produced no oil between January 29, 1991 and November 15, 1991, the cessation of production clause terminated the Surface and Damage Agreement.

■ In Wyoming, the word "production" refers to the severance of minerals from the ground. *State v. Pennzoil Co.*, 752 P.2d 975, 979 (Wyo.1988). However, the phrase "production activities" has a broader meaning. The use of the word "activities" implies an intention to consider more than the severing of minerals from the ground when considering whether production has ceased pursuant to the Surface and Damage Agreement. Production cannot, of course, take place if no activities associated with production occur; however, activities intended to result in production may occur even though those actions fail to result in actual production.

It is undisputed that Goldmark remained on site through the end of March and continued to complete and submit a variety of state and federal forms, at least one of which was filed in July of 1991. On September 30, 1991, Goldmark assigned its interest in the federal lease to Unicorn. Over the next month and a half, Unicorn replaced the defective pump unit and brought the well into production. Under these circumstances, production activities were ongoing during the

period of non-production. The Surface and Damage Agreement did not terminate pursuant to its own terms and the district court's ruling was correct.

Next, Emmett contends that the Surface and Damage Agreement was rendered a nullity since it contained an easement that was never recorded pursuant to Wyo.Stat. § 34–1–141(c), which provides, in pertinent part:

> For purposes of this act [section] an easement or agreement which does not specifically describe the location of the easement or which grants a right to locate an easement at a later date shall be valid for a period of one (1) year from the date of execution of the easement or agreement. If the specific description is not recorded within one (1) year then the easement or agreement shall be of no further force and effect.

We find it somewhat ironic that Emmett, the party who drafted the Surface and Damage Agreement, is seeking refuge from the terms of that agreement in the brambles of this unartfully drafted statute. Emmett insists that since the easement in the Surface and Damage Agreement was not recorded within one year of the time it was executed, it is of no force and effect. In assuming this position, he conveniently glosses over key facts and ignores important principles of law. The primary fact he disregards is that he continued to enjoy the benefit of yearly rental payments under the "unrecorded" agreement for over seven years before he filed suit. Emmett's suit was filed only after he failed to acquire a controlling interest in the oil well.

Under a contract that is clear and speaks to a particular point, the parties are bound by its plainly stated terms. *Rainbow Oil Co. v. Christmann*, 656 P.2d 538, 545 (Wyo.1982). Further, a contract will be construed against the party who drafted it. *McNeiley v. Ayres Jewelry Co.*, 855 P.2d 1242, 1244 (Wyo.1993). With these principles in mind, we note the Surface and Damage Agreement stated that "[t]his Agreement shall not be placed of record without the written consent of both parties." There is no indication in the record of any such consent between the parties. We will not permit Emmett to use the statute as a sword to avoid the agreement under these circumstances. Recording laws are to be construed to prevent fraud, not to produce it. *Cheyenne Nat. Bank v. Citizens Sav. Bank*, 391 P.2d 933, 936 (Wyo.1964). Moreover, as a general rule, and we consider the general rule especially applicable here, the failure to record is not fatal where the proponent of the failure to record has full notice of the conveyance in question and suffers no prejudice. *See* 66 Am.Jur.2d *Records & Recording Laws* §§ 71 & 160 (1973).

The final argument regarding the validity of the Surface and Damage Agreement revolves around Unicorn's inexcusable failure to answer a request for admission submitted by Emmett. The request asked Unicorn to admit "that the Surface and Damage Agreement is no longer in effect[.]" Unicorn failed to answer this request for admission. It must, therefore, be deemed admitted pursuant to W.R.C.P. 36. *TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1208 (Wyo.1990). If Unicorn felt that the request sought an admission of law, as Unicorn contends on appeal, the proper response was to object to the request on those grounds.

The question before us is whether Unicorn's failure to answer the request for admission renders the Surface and Damage Agreement invalid. We hold that it does not. *Unicorn's failure to respond to the request for admission, standing alone, cannot render the Surface and Damage Agreement invalid.* It is the duty of the court, not the parties, to determine questions of law. The fact that Unicorn has, in essence, admitted that the Surface and Damage Agreement is no longer in effect has no bearing on our determination of the same question. In light of our earlier conclusion that the Surface and Damage Agreement was not invalidated by its own terms, we find that the Surface and Damage Agreement remains in full force and effect.

Finally, Emmett argues that the easement articulated in the Surface and Damage Agreement has been terminated because Goldmark breached the agreement by

failing to pay yearly rent. This argument lacks merit. We agree with the district court's analysis in its decision letter, which provided, in pertinent part:

[I]t is readily apparent and undisputed from competent evidence in the record that the payment was late, EMMETT did not give the notice required by the agreement, the rent was paid by depositing it with the Clerk of District Court, and EMMETT is not now in a position to claim the right to terminate the easement because of the late payment.

Emmett's argument that he is entitled to punitive damages as a result of the illegal trespass must be rejected since we have concluded that the Surface and Damage Agreement and the accompanying easement remain in full force and effect; therefore, the issue of punitive damages has no validity. The remainder of the alleged breaches can be addressed during the trial on the merits which the district court postponed pending this appeal.

## IV.  CONCLUSION

The district court's decision is affirmed in all respects. The case is remanded for trial on the remaining issues.