RISSLER & McMURRY CO., a Wyoming Corporation, Appellant (Plaintiff),

v.

SHERIDAN AREA WATER SUPPLY JOINT POWERS BOARD; and HKM Associates, a Montana Corporation, Appellees (Defendants).

No. 95–227.

Supreme Court of Wyoming.

Dec. 20, 1996.

Donald J. Rissler and John R. Hursh of Central Wyoming Law Associates, P.C., Riverton, for Appellant.

Virgil G. Kinnaird of Northern Wyoming Law Associates, Sheridan, for Appellee Sheridan Area Water Supply Joint Powers Board.

Tom C. Toner of Yonkee & Toner, Sheridan, for Appellee HKM Associates.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, * and LEHMAN, JJ.

TAYLOR, Chief Justice.

Rissler & McMurry Company (Rissler) appeals summary judgment granted in favor of the Sheridan Area Water Supply Joint Powers Board (the Board) and HKM Associates (HKM), the engineer, in a dispute over the contract price for construction of a water distribution system in Sheridan County, Wyoming (the Project). When the Board denied Rissler's claim for an increase in contract price and extension of time after completion of the Project, Rissler sued the Board under contract theories. Rissler later added HKM as a defendant, claiming HKM was negligent in providing the plans and specifications for the Project. The district court granted sum-

* Chief Justice at time of oral argument.

mary judgment in favor of the Board on Rissler's contract claims because Rissler failed to comply with the written notification requirements of the contract. The district court separately granted summary judgment in favor of HKM on Rissler's negligence claims because Rissler sought purely economic damages and the duty owed by HKM to Rissler, if any, arose solely from the contract between the Board and Rissler.

We affirm.

## I. ISSUES

The issues presented by Rissler in its initial brief are:

### ISSUE I

Did the court error as a matter of law when it granted summary judgment to appellee Sheridan Area Water Supply Joint Power Board for the reason that:

A. Appellant had a cause of action for breach of implied warranty for defective plans and specifications; and

B. Appellant presented a genuine issue of material fact that appellee had waived the written notice provisions of the contract by subsequent course of conduct.

### ISSUE II

Did the court error as a matter of law when it granted summary judgment in favor of co-appellee HKM for the reason that the Wyoming law of torts does not preclude actions for economic damages suffered by a contractor as a result of defective engineering plans and specifications?

In response, the Board articulates the issues as follows:

A. Did the District Court err, in granting Summary Judgment to JPB [Sheridan Area Water Supply Joint Powers Board], by reason of the existence of an implied warranty of sufficiency of plans and specifications?

B. Was there a genuine issue of material fact as to whether the Appellant and JPB had, by course of conduct, waived provisions of a written construction contract?

HKM presents the following issues for consideration:

### Interference with Contract Claim

1. Did the District Court correctly rule that the Board did not breach its construction contract with Rissler and, therefore, HKM did not induce any breach?

### Negligence and Negligent Misrepresentation Claims

2. Can Rissler as a general contractor pursue a tort claim against HKM as the engineer to recover purely economic damages?

3. Did HKM owe a duty to protect the economic interests of Rissler, a non-client?

4. Did Rissler contractually agree that HKM would have no liability except for failure to act in good faith thus barring Rissler's claims for negligence and negligent misrepresentation?

### Negligent Misrepresentation

5. Did HKM misrepresent an "existing fact" to Rissler?

6. Could Rissler justifiably rely on the plans and specifications to show all underground utilities?

7. Was Rissler paid in full for all damages and delays associated with unlocated underground utilities?

8. Should negligence misrepresentation claims be recognized in the context of detailed construction contracts?

On its second bite at the apple, Rissler rephrases and presents these issues:

I. Did the court err when it ruled appellant had no claim for interference with contract?

II. Did the court err when it ruled that the economic loss doctrine bared [sic] appellant's claim of negligence against the engineer?

III. Are genuine issues of material fact raised in regard to appellant's negligent misrepresentation claim?

IV. Are genuine issues of material fact raised in regard to appellant's claim SJPB [Sheridan Area Water Supply

Joint Powers Board] waived the notice provisions of the contract by subsequent course of dealings?

V. Do specific notice provisions of the contract nevertheless bar appellant's claim for breach of contract and implied warranty against the owner?

## II. FACTS

During the summer of 1992, the Board advertised for bids for the construction of a water distribution system to serve the Little Goose Valley, Big Horn and the City of Sheridan. Prior to the bidding, the Board contracted with HKM for the design and preparation of site plans to be used in the bidding process and during construction. Rissler submitted the low bid and was awarded the contract. Rissler and the Board proceeded to negotiate a detailed construction contract which incorporated the plans and specifications provided by HKM and identified HKM as the engineer referred to throughout the contract. The job was to be completed within 270 days once notice to proceed was given. The duties and responsibilities of the parties were set forth in detail, including several provisions which required written notice of claims for an adjustment to the terms of the contract. These provisions, as they are relevant to this case, will be presented in detail in our discussion.

On November 2, 1992, Rissler was given notice to proceed. As construction ensued, Rissler quickly encountered several problems. By November 13, 1992, water began to appear in the trenches and, by the end of November, it was apparent to Rissler's supervisor that the bedding material required by HKM's specifications would not support the pipe in high ground water areas. Rissler's supervisor verbally complained about these conditions to HKM and believed that his complaints were memorialized in notes kept by HKM during the weekly project meetings. Rissler informed HKM that it believed rock was necessary to provide proper support, but HKM did not agree to deviate from the original specifications. Rissler was also frustrated by the inaccuracy of the utility locations as represented on the original plans, necessitating additional time and

costs in determining the actual locations and completing any repairs resulting from unexpected encounters with underground facilities. However, Rissler did not submit any written complaints or claims regarding these problems during construction of the Project.

By the end of April 1993, all the waterlines had been fully laid and buried. Testing of the pipeline, which began in April 1993 and continued through August 1993, revealed numerous leaks allegedly caused by movement of the pipe due to the lack of support provided by the materials specified in HKM's design. Rissler completed the repairs, placing rock in several areas to provide additional support to the pipe. All leaks were identified and repaired by August 10, 1993, and Rissler "was finished by August 11." Substantial completion of the Project was designated as September 18, 1993.

On September 16, 1993, Rissler delivered a letter to HKM entitled "Notification of Claim per Article 11 of the General Conditions of the Contract." Four months later, on January 17, 1994, Rissler and the Board signed a Change Order which, under its terms, included any adjustment to the contract. Almost two months after signing the Change Order, Rissler delivered documents entitled "Claim for Change in Contract Price and Time" dated March 1, 1994 which contained justifications for an increase in the contract price and an adjustment of the time needed to complete the Project. On September 16, 1994, the Board formally denied the claim without comment.

Rissler filed suit against the Board on October 11, 1994, alleging negligence in the provision of engineering plans and design, breach of implied warranty, and breach of contract. The Board timely responded and proceeded to file a motion for summary judgment contending that Rissler's failure to follow the written claims procedures barred claims on the contract and that the Wyoming Governmental Claims Act barred all of Rissler's tort claims. Rissler then filed an amended complaint naming both the Board and HKM as defendants. In its amended complaint, Rissler alleged three causes of action against the Board: breach of contract; breach of contractual duty not to interfere;

and breach of implied warranty of plans and specifications. Rissler alleged the same claims against HKM and, in addition, alleged negligent misrepresentation, negligence, and tortious interference with contractual relations. After answering the amended complaint, the Board supplemented its earlier motion for summary judgment with additional affidavits and briefing. On April 13, 1995, the district court granted the Board's motion for summary judgment ruling that Rissler failed to give timely notice as required by the contract.

HKM then made its own bid for summary judgment. While HKM's motion was pending, the parties moved to dismiss the contract claims against HKM, which motion was granted by the district court. The district court granted summary judgment in favor of HKM on the remaining claims on June 1, 1995. Rissler now appeals both summary judgment orders.

## III. DISCUSSION

### A. STANDARD OF REVIEW

Summary judgment is properly granted only where there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *Emmett Ranch, Inc. v. Goldmark Engineering, Inc.,* 908 P.2d 941, 944 (Wyo.1995). When reviewing a grant of summary judgment, we review the judgment in the same light as the district court, using the same information. *State ex rel. Bayou Liquors, Inc. v. City of Casper,* 906 P.2d 1046, 1048 (Wyo.1995). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. Material fact is defined as any fact which, if proved, would have the effect of establishing or refuting an essential element of the claim or defense asserted by the parties. *Century Ready–Mix Co. v. Campbell County School Dist.,* 816 P.2d 795, 799 (Wyo.1991). The record is reviewed from the vantage point most favorable to the non-moving party, awarding that party all favorable inferences which may be drawn from the facts. If the record reveals any proper legal theory on which summary judgment may be granted, we will affirm the district court. *Id.*

### B. SUMMARY JUDGMENT IN FAVOR OF THE BOARD

 Rissler premises its claims against the Board on the Board's alleged breach of contract and breach of implied warranty because it was "impossible" for Rissler to complete the job under the specifications and plans provided to Rissler. The Board responds by pointing to the contract provisions which allocate the responsibilities of the parties, including several provisions which require written notification of construction problems within specific time periods. The following are the contract provisions which most clearly illustrate the disposition of this case:

General Conditions:

3.2 If, during the performance of the Work, Contractor finds a conflict, error or discrepancy in the Contract Documents, Contractor shall so report to Engineer *in writing at once and before proceeding with the Work* affected thereby shall obtain a written interpretation or clarification from Engineer; however, Contractor shall not be liable to Owner or Engineer for failure to report any conflict, error or discrepancy in the Contract Documents unless Contractor had actual knowledge thereof or should reasonably have known thereof.

\* \* \* \* \* \*

9.12 \* \* \* The rendering of a decision by Engineer \* \* \* with respect to any such Claim, dispute or other matter \* \* \* will be a condition precedent to any exercise by Owner or Contractor of such rights or remedies as either may otherwise have under the Contract Documents or by Laws or Regulations in respect of any such Claim, dispute or other matter.

\* \* \* \* \* \*

11.2 The Contract Price may only be changed by a Change Order or by a Written Amendment. *Any Claim for an increase or decrease in the Contract Price shall be based on written notice delivered by the party making the Claim to the other party and to the Engineer*

*promptly (but in no event later than thirty days) after the occurrence of the event giving rise to the Claim and stating the general nature of the Claim. Notice of the amount of the Claim with the supporting data shall be delivered within sixty days after such occurrence * * * and shall be accompanied by Claimant's written statement that the amount claimed covers all known amounts (direct, indirect and consequential) to which the Claimant is entitled as a result of the occurrence of said event.* All Claims for adjustment in the Contract Price shall be determined by Engineer in accordance with paragraph 9.11 if Owner and Contractor cannot otherwise agree on the amount involved. No Claim for an adjustment in the Contract Price will be valid if not submitted in accordance with this paragraph 11.2.

 * * * * * *

12.1 The Contract Time may only be changed by a Change Order or a Written Amendment. *Any Claim for an extension or shortening of the Contract Time shall be based on written notice delivered by the party making the Claim to the other party and to the Engineer promptly (but in no event later than thirty days) after the occurrence of the event giving rise to the Claim and stating the general nature of the Claim. Notice of the extent of the Claim with supporting data shall be delivered within sixty days after such occurrence * * * and shall be accompanied by the Claimant's written statement that the adjustment claimed is the entire adjustment to which the Claimant has reason to believe it is entitled as a result of the occurrence of said event.* All Claims for adjustments in the Contract Time shall be determined by Engineer in accordance with paragraph 9.11 if Owner and Contractor cannot otherwise agree. No Claim for an adjustment in the Contract Price will be valid if not submitted in accordance with this paragraph 12.1

(Emphasis added.)

■ It is well settled that courts will give effect to the intent of the parties to a con-

tract when such intent is expressed in clear and unambiguous language. *Westates Const. Co. v. City of Cheyenne,* 775 P.2d 502, 504 (Wyo.1989). The terms of this contract are clear and unambiguous, specifically setting forth a mandatory procedure to establish the claims of the contractor. This procedure requires the contractor to give written notice when it discovers any error or discrepancy in the contract documents or when it anticipates a change in the contract price or time. When Rissler executed this contract, it agreed that failure to comply with these procedures precluded "any such Claim, dispute or other matter * * *."

We have recognized the right of the parties to create a contractual prerequisite to a right to sue. *Westates Const. Co.,* 775 P.2d at 504; *Brasel & Sims Const. Co., Inc. v. State Highway Com'n of Wyoming,* 655 P.2d 265, 268 (Wyo.1982). We must therefore give effect to the intent of the parties as expressed in the contract. *Westates Const. Co.,* 775 P.2d at 504. The record demonstrates that Rissler was aware of the problems which are the subject of its claims as early as November 1992. However, affording Rissler every favorable inference, the latest date on which Rissler was required to file a written claim was September 10, 1993, thirty days after Rissler was finished with the job. It is undisputed that Rissler did not submit any written claim until September 16, 1993. Thus, there is no question that Rissler failed to comply with the written claims procedure specifically set forth in the contract.

■ In an attempt to sidestep the express claims procedures, Rissler asserts that the Board waived the requirement of written notice. Relying on our decision in *Huang Intern., Inc. v. Foose Const. Co.,* 734 P.2d 975 (Wyo.1987), Rissler argues that because change orders were regularly provided after the start or completion of work arranged through oral requests, it is a question of fact whether the Board waived the requirement for timely written claims.

In *Huang Intern., Inc.,* 734 P.2d at 978, we held that "[t]he habitual disregard of a provision which requires that change orders for extras be in writing, if determinable as a

matter of fact, can amount to a waiver of the contractual requirement." In that case, the factual basis for our decision was that: (1) the parties· agreed that the contract documents did not include finalized plans and specifications; (2) as the project progressed, the parties orally agreed to work which far exceeded the original intent of the contract; and (3) there were no written change orders provided at any time during the construction. *Id.* at 978–79. The facts in the case before us, however, cannot amount to waiver.

■ To establish waiver, Rissler must show some facts which indicate that the parties *mutually* adopted a mode of performing the contract which differs from its terms. *Quin Blair Enterprises, Inc. v. Julien Const. Co.,* 597 P.2d 945, 951 n. 6 (Wyo.1979). Rissler presented no evidence that the Board agreed to forego the written procedures. The contract documents were complete when the parties entered the contract, and there is no requirement in the contract that change orders be signed before the work is done. The undisputed evidence demonstrates that during construction of the Project, written field orders were regularly issued which were eventually incorporated into change orders.

■ Regardless of the foregoing, the record indicates that Rissler agreed to a contract price *after* it submitted its claim on September 16, 1993. In January 1994, the parties signed a Change Order entitled "Reconciliation of Final Quantities." The following language is found on the Change Order above Rissler's signature: "Signature of the contractor indicates his agreement herewith, including any adjustment in the Contract Sum or the Contract Time." The Change Order does not include the amounts Rissler now claims it is owed nor is there any indication on the face of this document of any reservation of claims. Rissler offers no cogent argument why it should not be bound by this document. Therefore, we conclude

that the district court correctly found that Rissler presented no material issue of fact preventing summary judgment in favor of the Board as a matter of law.

## C. SUMMARY JUDGMENT IN FAVOR OF HKM

■ We now turn to Rissler's tort claims against HKM. The district court granted HKM's motion for summary judgment on the claims of negligence and negligent misrepresentation ruling that these claims fail under the "economic loss doctrine" and because HKM's duty to Rissler, if any, arose from contract. Rissler contends the district court's conclusion is in error because HKM's duty arises pursuant to Restatement of Torts (Second) § 552 (1977), which allows recovery of purely economic losses.

■ Restatement of Torts (Second), *supra*, § 552 has been recognized by this court as a viable basis for a claim. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1299 (Wyo.1995); *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo.1985). In order to present a claim for negligent misrepresentation against HKM, Rissler must show

> "[f]alse information supplied in the course of one's business for the guidance of others in their business, failure to exercise reasonable care in obtaining or relating the information, and pecuniary loss resulting from justifiable reliance thereon. Restatement of Torts (Second) § 552, p. 126 (1977)." ·

*Verschoor,* 907 P.2d at 1299 (*quoting Duffy,* 708 P.2d at 437). However, none of our previous decisions required consideration of the "economic loss rule" as applied to a claim under Restatement of Torts (Second), *supra*, § 552.

■ The "economic loss rule" bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property.[1] The pur-

---

**1.** This court has adopted the "economic loss rule" in products liability based on negligence and strict liability theories. *Schneider Nat., Inc. v. Holland Hitch Co.,* 843 P.2d 561, 586 (Wyo. 1992); *Continental Ins. v. Page Engineering Co.,* 783 P.2d 641, 647 (Wyo.1989); *Buckley v. Bell,*

703 P.2d 1089, 1095 (Wyo.1985); *Cline v. Sawyer,* 600 P.2d 725, 732 (Wyo.1979). We have also applied the "economic loss doctrine" where an employer sued a third party in negligence for the loss of his employee's services. *Champion Well Service, Inc. v. NL Industries,* 769 P.2d 382

pose of the "economic loss rule" is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles. As the court noted in *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55, 58 (1988):

> The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

The "economic loss rule" is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F.Supp. 1549, 1557 (D.S.C.1993). In this case, Rissler did not contract with HKM for the design of the Project and therefore had no opportunity to negotiate directly with HKM regarding the limits of its liability. However, Rissler had the opportunity to allocate the risks associated with the costs of the work when it contracted with the Board and, in fact, entered into a detailed contract which allowed it the means, method and opportunity to recover economic losses allegedly caused by HKM's negligence.

Considering nearly identical facts to those before us, the court in *Berschauer/Phillips Const. Co. v. Seattle School Dist. No. 1*, 124 Wash.2d 816, 881 P.2d 986, 992 (1994) reasoned that a bright line distinction between the remedies offered in contract and tort with respect to economic damages encourages the parties to negotiate toward the risk distribution that is desired or customary. In deference to the abilities of sophisticated businessmen to provide contractual remedies in their business dealings, that court held that the contractor's claims against the architect must fail under the economic loss doctrine. *Id.* 881 P.2d at 993. We agree.

■ We have consistently noted the importance of the parties' right to negotiate the terms of a contract, limited only by statutory prohibitions or public policy. *Commercial Union Ins. Co. v. Stamper*, 732 P.2d 534, 538 (Wyo.1987) (and cites therein); *Allstate Ins. Co. v. Wyoming Ins. Dept.*, 672 P.2d 810, 815 (Wyo.1983); *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351 (Wyo.1978). Just as firm has been our recognition that the parties to a contract must comply with the terms of their agreement. *Bouwkamp v. McNeill*, 902 P.2d 725, 727 (Wyo.1995); *Pete Lien & Sons, Inc. v. Ellsworth Peck Const. Co.*, 896 P.2d 761, 763 (Wyo.1995); *JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo.1992); *Westates Const. Co.*, 775 P.2d at 504. While we acknowledge that there may be circumstances under which purely economic damages may be a basis for an action under Restatement of Torts (Second), *supra*, § 552, we will not allow Section 552 to be used as a method to sidestep contractual duties or to provide a scapegoat for self-inflicted damages. Therefore, we hold that when the plaintiff has contracted to protect against economic liability caused by the negligence of the defendant, there is no claim under Restatement of Torts (Second), *supra*, § 552 for purely economic loss. We believe that this ruling not only encourages the parties to negotiate the limits of liability in a contractual situation, but it holds the parties to the terms of their agreement. The decision of the district court to grant summary judgment in favor of HKM is affirmed.

■ Rissler's intentional interference with contract claim against HKM was not presented on appeal through argument supported by any authority. Therefore, we will not consider this issue. *Earlywine v. Peterson*, 885 P.2d 861, 864 (Wyo.1994).

(Wyo.1989). In *JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo.1992), we noted our precedent regarding economic loss and held that tort liability can only be premised on a duty independent of contractual duties.

However, contrary to HKM's assertion, we have declined to apply the "economic loss rule" to *all* tort claims alleging pecuniary harm in the absence of physical harm. *Century Ready–Mix Co.*, 816 P.2d at 801.

## IV. CONCLUSION

The district court's orders granting summary judgment in favor of Sheridan Area Water Supply Joint Powers Board and HKM Associates are affirmed as there are no genuine issues of material fact and appellees are entitled to judgment as a matter of law.