2010 WY 34

**EXCEL CONSTRUCTION, INC.,**
a Wyoming corporation,
Appellant (Plaintiff),

v.

**HKM ENGINEERING, INC.,** a Montana
corporation, Appellee (Defendant).

No. S–09–0120.

Supreme Court of Wyoming.

March 23, 2010.

Representing Appellant: Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Representing Appellee: Matthew F. McLean of Crowley Fleck P.L.L.P., Bozeman, Montana.

Before GOLDEN, HILL, KITE, and BURKE, JJ., and DAVIS, D.J.

DAVIS, District Judge.

[¶ 1]   This is an appeal from a summary judgment granted to Appellee HKM Engineering by the district court for Big Horn County.   For the reasons set forth below, we affirm the district court.

## ISSUES

[¶ 2]   1.   Should this Court modify its ruling in *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228 (Wyo.1996), to permit negligence claims by general contractors against project engineers or design professionals?

2.   May Excel Construction maintain a claim against HKM for tortious interference with the contract between Excel Construction and the Town of Lovell when HKM was acting as Lovell's agent?

3.   May Excel Construction maintain a claim of misrepresentation on the basis asserted in the trial court under the *Rissler* decision?

4.   Does ¶ 9.10(A) of the agreement between the Town of Lovell and HKM impose a duty of good faith and fair dealing on HKM, creating an issue which must be tried?

## FACTS

[¶ 3]   This case involves a dispute between general contractor Excel Construction, Inc. ("Excel") and project engineer HKM Engineering, Inc. ("HKM") related to a contract for the replacement and improvement of water and sewer lines in the Town of Lovell, Wyoming.   The record before the Court is sparse, with only portions of the contract documents supplementing the pleadings below. The following can be gleaned from the

record, the briefing, and the arguments of counsel.

[¶ 4]  The Town of Lovell entered into an agreement with HKM Engineering, Inc. for engineering services on the project, including both design of the new water and sewer system and project management. In the terms pertinent to this appeal, the agreement provided that HKM would be the Town of Lovell's representative during construction. HKM was to make periodic site visits, and to assure that work progressed in accordance with project plans and specifications. If the parties agreed, HKM was to provide a project representative to provide more extensive observation of the work. The record does not reflect whether this occurred or not.

[¶ 5]  HKM was empowered to issue written clarifications of the contract documents, to authorize minor variations in the work, and to reject defective work by the contractor. HKM was also authorized by the agreement with the Town of Lovell to determine compliance of completed work with the contract requirements, and to act as an impartial interpreter and judge in so doing.

[¶ 6]  The contract between the Town of Lovell and HKM also provided as follows in ¶ 9.10(A):

Neither ENGINEER's authority or responsibility under this Article 9 or under any other provision of the Contract Documents nor any decision made by ENGINEER in good faith either to exercise or not exercise such authority or responsibility or the undertaking, exercise, or performance of any authority or responsibility by ENGINEER shall create, impose, or give rise to any duty in contract, tort, or otherwise owed by ENGINEER to CONTRACTOR, and Subcontractor, any Supplier, any other individual or entity, or to any surety for or employee or agent of any of them.

[¶ 7] The Town of Lovell entered into a separate agreement with Excel to serve as general contractor on the project. Only a small portion of the contract between the town and Excel are in the record. In any event, Excel and HKM each contracted separately with the Town of Lovell, and there is no contract between HKM and Excel. The provisions of ¶ 9.10 of the Town of Lovell–HKM contract are incorporated in the Town of Lovell–Excel contract by § 9.01(A)(4).

[¶ 8]  The record does not reflect any detailed information as to the nature of the dispute which arose between HKM and Excel. At oral argument, counsel for Excel gave as examples of Excel's claims that HKM's specifications called for insufficient backfill in certain locations, and that Excel was told by HKM representatives to simply purchase the required backfill and bill all of the charges for it at the end of the month, rather than submitting an immediate request for a change order or payment. Excel claims that HKM engaged in misrepresentation and other tortious conduct in making that representation, and that it was not paid for the cost of the additional backfill after it relied on HKM's direction. Counsel also claimed that HKM released Excel from the worksite with the understanding that it would return to complete some minor work, and then attempted to assess liquidated delay damages for the time during which Excel was not working after being released. It also claims that HKM improperly denied certification of substantial completion. Until substantial completion is certified, Excel cannot obtain the funds held as retainage to insure completion of the project.

[¶ 9]  Excel initially filed suit against the Town of Lovell on February 5, 2008. It claimed breach of contract, breach of an implied covenant of good faith and fair dealing, account stated, unjust enrichment, and entitlement to a declaratory judgment for amounts due under the agreement between the parties. The town counterclaimed for damages based on alleged breaches of contract by Excel. Excel amended its complaint to join HKM as a party-defendant on June 13, 2008, claiming that HKM had engaged in the tort of misrepresentation, breached a duty of good faith and fair dealing, intentionally interfered with Excel's contract with the Town of Lovell, and acted negligently. In its complaint, Excel accused HKM of unreasonably refusing to certify substantial completion of the work, and of hindering and delaying Excel's work by refusing to meet, approve change orders after

altering the scope and duration of the work, refusing to provide accurate and buildable drawings for the work, and generally of interfering with Excel's performance of its contract.

[¶ 10] Defendant HKM filed a motion to dismiss on August 8, 2008. In that motion, it contended that the complaint must be dismissed under *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228 (Wyo.1996), which determined that a contractor's claims against a project engineer were barred by the economic loss rule. Excel responded to the motion, and included in its response copies of portions of the contract between it and the Town of Lovell, as well as copies of portions of the contract between the town and HKM.

[¶ 11] At a hearing held on February 13, 2009, the district court converted HKM's motion to dismiss to a Rule 56 motion for summary judgment as permitted by Wyoming Rule of Civil Procedure 12(b)(6), based upon the inclusion of matters beyond the pleadings. The record does not reflect a request from either party for additional time to conduct discovery or to supplement the record to include any additional information which might properly have been considered on a motion for summary judgment.

[¶ 12] The district court granted HKM's motion. In its decision letter, the Court held that the economic loss rule articulated in *Rissler* did in fact bar recovery in this case, which it found to involve similar claims. Proceedings in the case against the Town of Lovell were stayed pending resolution of this appeal. We will affirm the district court's ruling, although we do so as to certain claims for different reasons.

### STANDARD OF REVIEW

[¶ 13] As noted above, HKM initially filed a motion to dismiss. This motion was converted to a motion for summary judgment after Excel attached portions of the contract to its response to the motion. Although the materials outside the pleadings which were considered by the district court were limited to a few pages of the contracts between the parties, and although the record contains no affidavits or depositions which might create a specific factual record, this Court will apply the standard applicable to motions for summary judgment under W.R.C.P. 56:

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of a cause of action or a defense that a party has asserted. *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, [1055](Wyo.2002).
>
> We evaluate the propriety of a summary judgment by employing the same standards and by examining the same material as the district court. *Id.* We examine *de novo* the record, in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable inferences that may be drawn from the record. *Roussalis v. Wyoming Medical Center, Inc.*, 4 P.3d 209, 229 (Wyo.2000). If upon review of the record, doubt exists about the presence of issues of material fact, that doubt must be resolved against the party seeking summary judgment. *Id.* We accord no deference to the district court's decisions on issues of law. *Metz,* ¶ 9.

*Linton v. E.C. Cates Agency, Inc.*, 2005 WY 63, ¶¶ 6–7, 113 P.3d 26, 28 (Wyo.2005). We "may affirm the summary judgment on any legal grounds appearing in the record." *Wyo. Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist.*, 2001 WY 86, ¶ 11, 31 P.3d 1242, 1247 (Wyo.2001).

*Lawrence v. City of Rawlins*, 2010 WY 7, ¶ 12, 224 P.3d 862, 867–868 (Wyo.2010).

### DISCUSSION

**Should the *Rissler* decision be modified to permit suit by a general contractor against a project engineer notwithstanding the economic loss rule?**

[¶ 14] HKM and the trial court relied heavily upon this Court's decision in

*Rissler & McMurry v. Sheridan Area Water Supply Joint Powers Bd.,* 929 P.2d 1228 (Wyo.1996). In that case, the general contractor under a contract for the construction of an improved water supply system in the Sheridan area sued, among others, the project engineer, which happened to be HKM, the Appellee in this case. Rissler claimed that HKM was negligent in the formulation of the plans and specifications for the project, thus causing it damage. It also claimed that HKM had made negligent misrepresentations which also caused it damage.

[¶ 15] In *Rissler,* the trial court granted summary judgment in favor of HKM based upon the economic loss rule. In affirming, this Court stated:

> The "economic loss rule" bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property. The purpose of the "economic loss rule" is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles. As the court noted in *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55, 58 (1988):

>> The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

> The "economic loss rule" is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.,* 826 F.Supp. 1549, 1557 (D.S.C.1993). In this case, Rissler did not contract with HKM for the design of the Project and therefore had no opportunity to negotiate directly with HKM regarding the limits of its liability. However, Rissler had the opportunity to allocate the risks associated with the costs of the work when it contracted with the Board and, in fact, entered into a detailed contract which allowed it the means, method and opportunity to recover economic losses allegedly caused by HKM's negligence.

*Rissler,* 929 P.2d at 1234–35 (footnote omitted). Excel argues that this Court should modify its ruling in *Rissler* to permit suit by a contractor against a professional project engineer like HKM on theories of negligence and negligent misrepresentation. It argues that other states have permitted suit against design and construction management professionals on this basis in spite of the economic loss rule. It points out that in *Century Ready–Mix Co. v. Campbell County Sch. Dist.,* 816 P.2d 795, 801 (Wyo.1991), the Court recognized that "a majority of jurisdictions now recognize a tort duty of care in the absence of contractual privity" between an architect/engineer and a contractor.

[¶ 16] As an example of this approach, Excel points to the Montana Supreme Court's decision in *Jim's Excavating Service, Inc. v. HKM Associates,* 265 Mont. 494, 878 P.2d 248 (1994). In that case, the Montana court held that a third party contractor may recover from an architect or engineer when that design professional knew or should have known that the particular plaintiff or an identifiable class of plaintiffs were at risk if they relied upon information supplied. *Id.* at 254–55.

[¶ 17] The Montana decision in *Jim's Excavating Service* preceded the decision in *Rissler,* and it is inconsistent with that ruling. The Court continues to believe that parties to a construction contract have the opportunity to allocate the economic risks associated with the work, and that they do not need the special protections of tort law to shield them from losses arising from risks, including negligence of a design professional, which are inherent in performance of the contract. *Rissler,* 929 P.2d at 1235. A respectable number of states continue to follow the same rule. *E.g., BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 71–75 (Colo.2004)

(holding that economic loss doctrine barred subcontractor's negligence and negligent misrepresentation claims against engineering firm and inspector); *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assoc., Inc.*, 28 P.3d 669, 680–83 (Utah 2001) (relying on *Rissler* and holding that economic loss doctrine barred subcontractor's negligence and negligent misrepresentation claims against members of the design team); *Blake Constr. Co., Inc. v. Alley*, 233 Va. 31, 353 S.E.2d 724, 726–27 (1987) (holding that a contractor cannot recover economic losses against a design professional in the absence of contractual privity); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.*, 124 Wash.2d 816, 881 P.2d 986, 989–93 (1994) (recovery of economic loss by contractor against architect, structural engineer, and project inspector due to construction delays was limited to remedies provided by construction contract).

[¶ 18]   For these reasons, we will decline Excel's invitation to overrule *Rissler* as it applies to claims arising involving negligence or negligent misrepresentation in claims between a contractor and design professional/project manager.   This decision disposes of Excel's claim of negligence.   If Excel claims negligent representation as opposed to intentional misrepresentation, this ruling disposes of that claim as well.   Excel's allegations with regard to HKM's conduct involve performance of contractual duties, at least as they involve theories of negligence, and are barred by the economic loss rule in *Rissler*.

[¶ 19]   In footnote 1 to the *Rissler* decision, this Court declined to apply the economic loss rule to all tort claims alleging solely pecuniary harm.   929 P.2d at 1234 n. 1. As noted in *JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo.1992), tort liability may still be premised on a duty independent of contractual duties.   We therefore examine the remainder of Appellant's claims to determine whether summary judgment was appropriately granted as to those claims.

### Is Excel Entitled to Maintain Its Claim of Tortious Interference with Contract?

[¶ 20]   Excel argues that even courts rigorously applying the economic loss rule do not bar claims based on intentional tort theories, and therefore contends that it can pursue a claim against HKM for tortiously interfering with its contract with the Town of Lovell.   The agreement between HKM and the Town of Lovell provided that HKM was to act as the town's agent in administering the construction contract, including making determinations concerning change orders, etc.   The parties agree that HKM was acting as the Town of Lovell's agent in that respect, and the amended complaint filed by Excel specifically alleges that HKM "acted as Lovell's [agent] throughout the project."   Nowhere in Excel's amended complaint or in the briefing of the parties does Excel suggest that HKM acted outside the scope of its duties as the Town of Lovell's agent in any of the actions complained of.

[¶ 21]   It has long been the rule in this state and elsewhere that a claim for intentional interference with contract cannot survive if it involves an assertion that an agent for one party to the contract interfered with it.   In *Kvenild v. Taylor*, 594 P.2d 972 (Wyo. 1979), the plaintiffs claimed that a real estate agent interfered with their contractual rights to purchase a piece of property by recommending that her principal sell the real property to another buyer.   This Court reversed a judgment for money damages in favor of the plaintiffs because the real estate agent was acting as the sellers' agent.   It quoted *Board of Trustees of Weston Cty. Sch. Dist. # 1 v. Holso*, 584 P.2d 1009, 1017 (Wyo.1978), to this effect:

> These theories [intentional interference with contract and intentional interference with prospective advantage], however, do not apply to actions between parties to an existing contract—they lie only against outsiders who interfere with contractual expectancies of others.

*Kvenild,* 594 P.2d at 977.

[¶ 22]   The Court reached the same result in *Chasson v. Community Action of Laramie County, Inc.*, 768 P.2d 572, 579–580 (Wyo. 1989), holding that corporate officers could not be held liable for interference with the contract of an employee of the corporation.

In *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 69, 75 P.3d 640, 662 (Wyo. 2003), the holding in *Kvenild* was summarized to be that a "vendor and her real estate agent could not be liable for tortious interference with a contract to which vendor was a party."

[¶ 23] In this case, HKM was charged with determining compliance with the contract, approving change orders, and otherwise serving as decision-maker for the Town of Lovell by the express terms of its agreement. HKM therefore acted not only as an agent, but as an agent with the power to make decisions on behalf of the town. Its actions, if they breached the contract, may entitle Excel to recover against the town for that breach, but Excel may not recover from HKM on a theory of intentional interference with a contract for actions taken as the town's agent. The trial court properly granted summary judgment on this claim, although it did so for different reasons.

### Is Excel entitled to maintain its claim of misrepresentation?

[¶ 24] As already noted, this Court's decision in *Rissler* would bar claims against HKM based upon negligent misrepresentation. Excel argues that its claim of misrepresentation is really a claim of intentional misrepresentation or fraud. It contends that even courts which apply the economic loss rule to disputes between contractors and design professionals exclude claims of fraud from the rule because fraud is a remedy for purely economic loss. HKM responds that Excel made a claim of negligent misrepresentation, not intentional misrepresentation or fraud. HKM also responds that in those jurisdictions in which fraud or other intentional torts are treated as exceptions to the economic loss rule, such claims are only allowed if they arise from an independent duty and if they involve claims for damages which are not available for a breach of contract. HKM denies that Excel's claim meets these criteria.

[¶ 25] The trial court held that a claim for intentional misrepresentation was barred by *Rissler* because fraud shares common elements with the tort of negligent mis-

representation. A claim for intentional misrepresentation is not necessarily barred by the economic loss rule. Such a claim could be predicated on an independent duty. *Rissler*, 929 P.2d at 1234 n. 1; *JBC*, 843 P.2d at 1197. Of course, a claimant may not use a fraud claim as an artifice to sidestep contractual duties or the economic loss rule. *Rissler*, 929 P.2d at 1235.

[¶ 26] Both parties cited cases in which the courts of other states have taken a case-by-case approach to the question of whether an intentional tort claim is based upon an independent duty, or whether it has been pled simply to avoid contractual limitations. In *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir.2007), the Ninth Circuit applied Nevada law to a claim that General Motors Acceptance Corporation ("GMAC") had misrepresented the terms of a lien and tricked a car dealer into signing backdated assignments of accounts. GMAC asserted the economic loss rule as a defense. The Ninth Circuit noted that the economic loss rule is in part intended to prevent tort law from progressing so far that "contract law would drown in a sea of tort," quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986). *Giles*, 494 F.3d at 874.

[¶ 27] The *Giles* court also pointed out that application of the economic loss rule has historically been difficult because courts have stated that purely economic losses may not be recovered in tort in overly broad terms. *Id.* These statements are not completely accurate, it noted, because torts such as fraud and conversion exist to remedy purely economic loss, quoting *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 11, 13 (Utah 2003). Some courts apply the economic loss rule only in products liability cases and negligence actions, and not to claims for fraud and other intentional torts. *Giles*, 494 F.3d at 875.

[¶ 28] The *Giles* court further pointed out that some courts, including those of Nevada, analyze fraud claims on a case-by-case basis in an effort to determine whether a particular claim really alleges nothing more than a

failure to perform a promise contained in a contract. *Giles*, 494 F.3d at 876. The Nevada Supreme Court has treated the phrase "purely economic loss" as a term of art referring to losses which could be recovered in a contract suit. *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263–64 (2000). As a result, it has held that it could not delineate the entire universe of intentional torts which would or would not be subject to the economic loss rule, and concluded that each case had to be examined to determine whether or not the economic loss rule would apply to bar intentional tort claims. *Id.* at 1266 n. 3.

[¶ 29] The Ninth Circuit summarized the Nevada rule as follows:

> Based on our reading of the Nevada cases, Nevada's economic loss doctrine is generally consistent with the principles discernable in the case law of other jurisdictions. Broadly speaking, Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability. Nevada law may also bar recovery for tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract. But it does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff.

*Giles*, 494 F.3d at 879. Based on its analysis, the *Giles* court held that the fraud claims involved in that case were not barred because they related to behavior outside the contract and violated an obligation under Nevada law not to commit fraud. *Id.* at 880.

[¶ 30] HKM cited *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 2009 WL 1152160 (Colo.App.2009) (currently unpublished).[1] In that case, which involved a construction contract, the intermediate appellate court held that a claim that the project engineer concealed the inadequacy of its design and thereby committed fraud was barred by the economic loss rule. The court interpreted a three-factor test set out by the Colorado Supreme Court in *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004) as (1) whether the duty allegedly breached is independent of the parties' contract; (2) whether there is a recognized common law duty of care; and (3) whether the tort duty differs in any way from the contractual duty. *Hamon*, *9.

[¶ 31] Both cases are consistent with this Court's decisions in previous cases. A party may not sidestep contractual limitations by simply pleading an intentional tort. *Rissler*, 929 P.2d at 1235. Recovery on a tort theory requires a showing that a duty independent of contract was violated. *Id.* at 1235 n. 1; *JBC of Wyoming Corp*, 843 P.2d at 1197. Determining whether a particular intentional tort claim is simply a repackaged contract claim requires consideration of the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed.

[¶ 32] In this case, the record consisted only of the pleadings and a few pages from the contracts Excel and HKM had with the Town of Lovell. This limited record would make it impossible to determine whether or not Excel's claim arises from an independent duty if Excel has adequately pled a claim for intentional misrepresentation or fraud. To determine whether such a claim has been pled obviously requires an analysis of the pleadings in this case.

[¶ 33] The elements of intentional misrepresentation or fraud are as follows:

> (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages.

*Birt*, ¶ 42, 75 P.3d at 656. In order to prove intentional misrepresentation, the plaintiff must show that the misrepresentation was made intentionally, with knowledge of its fal-

---

1. The opinion has not yet been released for publication, perhaps pending a petition for rehearing or for certiorari to the Colorado Supreme Court.

sity, or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement. *Id.; Restatement (Second) of Torts* § 526 (1977). Fraud must be proven by clear and convincing evidence, as opposed to by a preponderance of the evidence for negligent misrepresentation claims. *Birt,* ¶ 42, 75 P.3d at 656. Fraud must be pled with particularity. W.R.C.P. 9(b).

[¶ 34] Excel alleged as follows in its complaint:

33. HKM represented to Excel that at least some of Excel's claims for impacts from extra work would be addressed at the end of the Project without adhering to the formal contract requirements ("Representation").

34. The Representation made by HKM was false.

35. HKM made the Representation to induce Excel into believing that Excel would not have to provide documentation for every impact at the time of the impact because the parties would address those impacts at the end of the Project.

36. Excel relied on the Representation by not submitting documentation for every impact per the contract requirements.

37. Excel reasonably believed HKM's Representation was true.

38. Excel has suffered damages in an amount to be proven at trial **as a result of HKM's negligent misrepresentation.** [Emphasis added].

[¶ 35] The Wyoming Rules of Civil Procedure permit "notice pleading," and pleadings are to be liberally construed to do substantial justice. However, even notice pleading requires fair notice to opposing parties of the nature of a party's claim. *Krenning v. Heart Mtn. Irr. Dist.,* 2009 WY 11, ¶ 30, 200 P.3d 774, 783 (Wyo.2009). Liberal construction of pleadings does not excuse omission of that which is material and necessary in order to entitle one to relief. *William F. West Ranch, LLC v. Tyrrell,* 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo.2009).

[¶ 36] The claim made by Excel can only be construed as one for negligent misrepresentation. Excel did not allege that HKM intentionally made representations which it knew to be false, even though fraud must be pled with particularity. In addition, Excel specifically described its claim as one for "negligent misrepresentation." The record does not suggest that Excel ever sought to amend its claim to add allegations of fraud. Under the circumstances, the Court can only conclude that Excel made a claim for negligent misrepresentation and not for fraud. Under *Rissler,* a claim for negligent misrepresentation falls within the bar of the economic loss rule, as the parties can allocate the risks related to such misrepresentations by the terms of the contract itself. The trial court therefore correctly granted the motion for summary judgment as to Excel's claim of misrepresentation.

### Is Excel entitled to maintain its claim of breach of a covenant of good faith

### and fair dealing?

[¶ 37] As noted above, HKM's agreement with the Town of Lovell provided as follows in ¶ 9.10(A):

Neither ENGINEER's authority or responsibility under this Article 9 or under any other provision of the Contract Documents nor any decision made by ENGINEER in good faith either to exercise or not exercise such authority or responsibility or the undertaking, exercise, or performance of any authority or responsibility by ENGINEER shall create, impose, or give rise to any duty in contract, tort, or otherwise owed by ENGINEER to CONTRACTOR, and Subcontractor, any Supplier, any other individual or entity, or to any surety for or employee or agent of any of them.

The contract between Excel and the Town of Lovell incorporated these provisions. Excel argues that this language created an obligation on the part of HKM to act in good faith in its decision-making as the town's agent, and that it failed to do so. HKM makes a highly technical and somewhat implausible argument that the quoted language does not impose a duty to act in good faith, but only to decide in good faith whether to exercise its authority or not, after which the

clause is inapplicable. Neither interpretation is correct.

[¶ 38] The language in question is drawn from the standard "general conditions" portion of an owner-engineer form developed by a group of professional associations. This particular provision has been referred to in the case law as an "exculpatory clause." *See, e.g., Lyndon Prop. Ins. Co. v. Duke Levy & Associates, L.L.C.,* 475 F.3d 268, 271–72 (5th Cir.2007). It is so called because it purports to exculpate project managers for liability for torts which do not involve bad faith. At least some courts have held the clause invalid even for that purpose. *Id.*

[¶ 39] This Court has recognized that all contracts contain an implied covenant of good faith and fair dealing. *Scherer Constr., LLC v. Hedquist Constr., Inc.,* 2001 WY 23, ¶ 24, 18 P.3d 645, 655 (Wyo.2001). With some rare exceptions in insurance and employment law, a suit based on the implied covenant sounds in contract and not in tort. *Id.,* ¶ 17, 18 P.3d at 652. The implied covenant imposes an obligation to act honestly in fact in the transaction, and to refrain from actions which would injure the rights of the other party to receive the benefit of its bargain. *Id.,* ¶ 19, 18 P.3d at 653. Obligations under the implied covenant must arise from and may not conflict with the express obligations of the parties' contract. *Id.*

[¶ 40] Excel did not contract directly with HKM, and there is therefore no implied covenant under *Scherer.* However, Excel argues that the language of ¶ 9.10(A) imposes the same duties upon HKM as the implied covenant would if Excel had contracted directly with HKM.

[¶ 41] The Court does not construe the clause as creating an obligation on the part of the engineer to act in good faith in all decisions affecting the contractor as might arguably be the case under an implied covenant of good faith and fair dealing. The exculpatory clause would just limit the engineer's liability to claims which involve an element of bad faith. Negligence does not require proof of bad faith. On the other hand fraud or intentional misrepresentation

requires proof of bad faith to the extent of knowingly making a false representation intended to induce reliance by another party.

[¶ 42] In other words, the clause means that the contractor may not recover from the engineer for careless errors which were not made in bad faith, while it does not bar claims involving bad faith such as fraud, provided that Excel might pursue those claims as a matter of substantive law. The "exculpatory clause" is thus limited to claims which do not involve bad faith. The clause appears to be an effort to allocate the risks of certain types of conduct in performance of the contract, as encouraged by the economic loss rule. *See Rissler,* 929 P.2d at 1234–35.

[¶ 43] As previously held, Excel may not maintain a claim of intentional interference with contract against the agent of a party to its contract, and it did not present a claim of intentional misrepresentation or fraud to the trial court on the pleadings in this case. Thus, although the clause did not purport to exculpate HKM for actions taken in bad faith, those claims either could not be maintained as a matter of substantive law, or were not presented by the pleadings before the trial court.

## CONCLUSION

[¶ 44] The Court declines to modify the economic loss rule in *Rissler* to permit actions against a design professional based on negligence. Although a party may be able to maintain an action for the intentional tort of interference with contract under *Rissler,* Excel may not maintain such a claim against HKM for actions taken in its capacity as the Town of Lovell's agent under the Excel–Town of Lovell contract. While a party may be entitled to maintain a claim for intentional misrepresentation or fraud under certain circumstances notwithstanding the economic loss rule enunciated in *Rissler,* Excel did not present such a claim to the district court, and Excel's claim for negligent misrepresentation is barred by *Rissler.* The language of ¶ 9.10(A) of the HKM–Town of Lovell contract did not impose a duty similar to that of the implied covenant of good faith and fair dealing on HKM, but rather limited the ex-

culpatory language contained in that paragraph to claims not involving bad faith. The clause would not have barred tort claims involving an element of bad faith, but Excel either could not maintain its intentional tort claims as a matter of substantive law or did not raise them in the trial court.

[¶ 45]   The judgment of the district court is therefore affirmed.