**William M. GREEVES and Jeanne R. Greeves, Appellants (Plaintiffs),**

v.

**Dave L. ROSENBAUM and Wanda J. Rosenbaum, husband and wife, Appellees (Defendants).**

No. 97–190.

Supreme Court of Wyoming.

Sept. 24, 1998.

John M. Daly of Daly Law Associates, Gillette, for Appellants (Plaintiffs).

H.W. Rasmussen of Badley & Rasmussen, P.C., Sheridan, for Appellees (Defendants).

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice.

Appellants challenge the dismissal of their claims against appellees for breach of express and implied warranties in the construction of a new home. Since the premises were sold "as is," and appellants failed to allege any structural failure covered by the express warranty, we affirm.

## I. ISSUES

Appellants, William M. and Jeanne R. Greeves (the Greeves), identify the following issues:

I. Did the Plaintiff[s'] complaint state a claim under an express warranty provision in an Agreement for Warranty Deed?

II. Is the existence of substandard lumber in the floor joists of a newly constructed house enough of a defect in and of itself to state a claim under an express warranty, where the warranty is for all construction?

III. Is the existence of ungraded lumber in the floor joists of a house a patent or latent defect, and as such, does the existence of an inspection clause in [an] Agreement for Warranty Deed contract require the purchaser of a new house to have a detailed inspection, or is it reasonable for the purchaser to rely on the builder for acceptable construction?

IV. Assuming that a claim under an express warranty was NOT made within the required time period, does an "AS IS"

* Chief Justice at time of expedited conference.

provision in a contract remove the Plaintiffs' claim for an implied warranty of habitability?

Appellees, Dave L. and Wanda J. Rosenbaum (the Rosenbaums), respond:

1. Did the District Court properly grant judgment on the pleadings pursuant to Rule 12(c) of the Wyoming Rules of Civil Procedure?

## II. FACTS

The Rosenbaums, commercial builders, built a house and sold it to the Greeves on a contract for deed. Prior to closing, the parties signed an "Offer, Acceptance and Receipt Specific Performance Contract" (the Purchase Agreement) on August 4, 1995. At that time, the Greeves were aware that the property was currently the subject of ongoing litigation. On August 29, 1995, the parties closed the deal by executing an Agreement for Warranty Deed (the Final Agreement), which incorporated the terms of the Purchase Agreement to the extent that the provisions did not conflict with the Final Agreement.

A visual inspection of the property was conducted during the course of the ongoing litigation. The inspection revealed that the lumber used for the floor joists did not have grade stamps, and many joists which could be seen from the crawl space contained knots and horizontal cracks. The Greeves then hired their own inspector, who concurred with the results of the first inspection.

On August 23, 1996, the Greeves filed a complaint against the Rosenbaums, alleging breach of express warranty, breach of implied warranty, and deceptive trade practices due to the use of defective materials, attaching the Purchase Agreement to the complaint.[1] In addition, the Greeves attached the inspection reports as factual underpinning for their claims. In response, the Rosenbaums filed an answer and a motion for judgment on the pleadings, attaching a copy of the Final Agreement. The district court granted the motion, but the Greeves

salvaged leave to amend the complaint. The amended complaint was again rebuffed by the district court, but the Greeves were allowed one more opportunity to amend their pleadings as to express warranty issues.

The district court granted the Rosenbaums' third motion for judgment on the pleadings, holding:

Plaintiffs have been afforded several opportunities to amend their pleadings, but seem unable to allege facts which entitle them to recovery. This is not an implied warranty case, the agreement contains an express warranty as the only remedy. No claims were made during the one year warranty, and, indeed, there is not now a claim of failure of any part of the building. The gravamen of plaintiffs' claim seems to be that there was a non-disclosure on the part of defendants, e.g. that ungraded lumber was used in joists in the house. However, except for the one year express warranty, the house was sold "as is" and buyers were given the opportunity to inspect. The use of ungraded lumber is not a latent defect, but one which would have been apparent upon inspection. Accordingly, plaintiffs have no viable non-disclosure claim.

This timely appeal followed.

## III. STANDARD OF REVIEW

■■ A defendant is entitled to judgment on the pleadings if the undisputed facts appearing in the pleadings, supplemented by any facts of which the district court may take judicial notice, establish that no relief can be granted. *Johnson v. Griffin,* 922 P.2d 860, 861–62 (Wyo.), *cert. denied,* —— U.S. ——, 117 S.Ct. 402, 136 L.Ed.2d 316 (1996); *Bon v. Lemp,* 444 P.2d 333, 335 (Wyo.1968); W.R.C.P. 12(c). A judgment on the pleadings is appropriate if all material allegations of fact are admitted in the pleadings and only questions of law remain. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1367 at 510 (2d ed.1990).

---

1. The Greeves also had a list of specific repairs which they alleged had not been completed. It appears these issues were resolved during the extended time period involved in the pleading stage of the lawsuit.

■ The parties agree that the contract submitted with the Rosenbaums' answer is an accurate copy of their agreement. Based upon the pleadings and the written terms of the contract, the district court determined that the Greeves were unable to state a claim upon which relief could be granted. Therefore, our review is akin to our consideration of a motion to dismiss a complaint pursuant to W.R.C.P. 12(b)(6). *Landmark, Inc. v. Stockmen's Bank & Trust Co.*, 680 P.2d 471, 474–75 (Wyo.1984). All allegations stated in the complaint are treated as true, and the allegations must be viewed in the light most favorable to the plaintiffs. *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 734 (Wyo. 1979).

## IV. DISCUSSION

### A. EXPRESS WARRANTY

■ The Greeves contend the district court erred in holding that they failed to state a claim as to any structural failing. Since the Rosenbaums used ungraded lumber in the floor joists that did not meet the standards of the Uniform Building Code, the Greeves contend the Rosenbaums breached the one year express warranty on "all construction."

Relevant provisions of the Purchase Agreement, incorporated into the Final Agreement, state:

**XI. INSPECTIONS.**

**A. Professional Inspections.**

Buyer may obtain, at Buyer's option and expense, and upon the notice required herein, electrical, mechanical, structural, environmental and/or other inspections of the property by qualified professional inspectors, and shall pay for any damage to Seller's property caused by Buyer's inspectors. Buyer, or designee, shall have the right to make any inspections of the physical condition of the property at reasonable times, upon at least 24 hours advance notice to Seller. Unless Seller receives written notice, signed by Buyer on or before August 11, 1995, of any defect(s) Buyer is requesting to be repaired, the physical condition of the property shall be deemed to be satisfactory to Buyer except as identified in Section XI C below.

* * *

**D. Waiver of Defects.**

Buyer acknowledges that he has not been denied any opportunity to inspect property and has done so to Buyer's satisfaction. Other than repairs requested by Buyer as set out above, or in the event no repairs or inspections are required by Buyer, Buyer accepts the property in its entirety in "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

The disclaimer of an express warranty is specifically modified, in writing, to a "One Year Warranty on all of the construction to be Warranted by Seller/Builder."

The Final Agreement contains the following provision:

*INSPECTION*

BUYER acknowledges by the signing of this Agreement that they have inspected the premises and that no warranties, either express or implied, have been given by SELLER concerning the premises, other than those stated herein regarding title and a one year warranty on all construction. Premises are transferred "AS IS."

The inspection reports submitted by the Greeves demonstrate that, had the Greeves taken the opportunity to have the house visually inspected, the ungraded lumber would have been discovered. Thus, under the terms of the contract, they accepted the lumber "as is" at the time they closed the deal.

Other than the existence of the ungraded lumber, the Greeves do not claim any instance of structural or construction problems during their occupancy of the premises. They do not claim that the floor joists have caused any physical damage to the premises nor do they claim that they are limited in the use of their home. The requirements of the Uniform Building Code are irrelevant in this case because the contract warrants compliance only with city, county and state codes. The house passed all inspections by the county building department, including a framing

inspection, and a certificate of occupancy was issued. Consequently, assuming every allegation in the complaint as true, the Greeves failed to allege any facts which constitute a breach of an express warranty.

## B. IMPLIED WARRANTY

■■■ The Greeves also attack the district court's finding that there was no implied warranty of habitability. In *Schepps v. Howe*, 665 P.2d 504, 509 (Wyo.1983), we held that an "as is" clause used in the listing, advertising and selling of a house was an effective waiver of an implied warranty. Acknowledging this precedent, the Greeves claim that the facts of their case can be distinguished from the facts in *Schepps*, and that public policy warrants a different result.

In *Schepps*, the buyers purchased a partially built home, constructed in substantial part by the owner for his personal use. Because the owner was transferred before the completion of the house, he placed the house on the market and advertised its sale "as is." Shortly after the buyers took possession, they began to experience numerous problems. A portion of the roof blew off and, upon inspection, they were informed that the building structure would not pass state code. A subsequent electrical inspection noted fifty-two violations of the state electrical code. The plumbing had collapsed, and the buyers were warned not to use the heating system due to the possibility of fire. *Id.* at 507.

Rejecting the buyers' claims based on an implied warranty of habitability, we noted the policy of this state as expressed in Wyo. Stat. § 34–21–233(c) (1977),[2] which provided, in pertinent part:

> "(i) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; * * *[.]"

*Schepps*, 665 P.2d at 509 n. 2. Based on the factual foundation that the buyers were clearly notified that the property was sold "as is," and the ability of the buyers to discover the defect prior to the sale, we held that the buyers waived an implied warranty of habitability. *Id.* at 509–10.

The Greeves attempt to distinguish this case by claiming their failure to inspect was justified because their home was built as a business venture. They also claim that because the house was generally complete, they did not have the same opportunity to inspect. We are not persuaded. The Greeves were clearly notified through several provisions of the contract that they had the right to inspect, but the sale of the premises was "as is" and no implied warranties would be given. Contrary to the Greeves' assertions that an implied warranty of habitability must be specifically identified and explained before a waiver will be effective, the unambiguous language in the Purchase Agreement and the Final Agreement clearly identifying the transfer of the property "AS IS" sufficiently disclaimed all implied warranties, including an implied warranty of habitability. It is equally apparent that, as in *Schepps*, the condition of the floor joists would have been discovered upon a visual inspection.

■■■ The Greeves claim it is unreasonable to expect a new home purchaser to shoulder the additional expense of hiring a professional to inspect the house before closing. They argue that public policy mandates that a builder not be allowed to hide behind an inspection clause to avoid responsibility for shoddy workmanship. We have recognized that the purchase of a new home is the largest and most important purchase that an individual may make in a lifetime, and have discarded the common law doctrine of caveat emptor in the sale of new housing by a builder-vendor. *Schepps*, 665 P.2d at 510; *Moxley*, 600 P.2d at 735; *Tavares v. Horstman*, 542 P.2d 1275, 1279–80 (Wyo.1975). The protection afforded to purchasers of a new home, however, does not go so far as to allow the purchasers to ignore *their* negotiated responsibilities.

Knowing that the premises were the subject of litigation, the Greeves signed an agreement under which they assumed the

---

**2.** Now renumbered as Wyo. Stat. § 34.1–2–316  (1997).

responsibility to conduct all inspections. The agreement clearly stated that whether they chose to hire someone to inspect or not, they waived any defect at the time of the sale. The agreement further stated that the sale was "as is" and specifically disclaimed any implied warranties. This is not a case where the builder-vendor attempted to hide a latent defect or dissuade the buyer from inspecting the premises; the Greeves had an unobstructed opportunity to protect their investment through the engagement of a professional to conduct a visual inspection. The Greeves made the decision to sign the contract and to forego the expense of inspection. The consequences of that decision cannot be fairly imputed to anyone but themselves.

Given our determination that the Greeves failed to state a claim under any warranty theory, we will not address the issue of notice.

## V. CONCLUSION

The terms of the contract waived all implied warranties and provided only a one year express warranty on construction. Since the complaint failed to allege any construction defect which breached the express warranty, we affirm the district court's judgment on the pleadings in favor of the Rosenbaums.