# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 10

### OCTOBER TERM, A.D. 2015

### January 22, 2016

LEON N. ROGERS and BRENDA K. ROGERS,

Appellants
(Plaintiffs),

v.

JEFFREY WRIGHT, JWRIGHT DEVELOPMENT, LLC, and JWRIGHT COMPANIES, INC.,

Appellees
(Defendants).

S-15-0127

*Appeal from the District Court of Uinta County*
The Honorable Norman E. Young, Judge

*Representing Appellants:*
Michael Stulken, Green River, Wyoming.

*Representing Appellees:*
Jason H. Robinson of Babcock Scott & Babcock, P.C., Salt Lake City, Utah.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   In the summer of 2009, Leon N. and Brenda K. Rogers purchased a home in Evanston, Wyoming, from Jeffrey Wright (Mr. Wright). After the Rogers discovered several defects in the home, they sued Mr. Wright, JWright Development, LLC (JWright Development), and JWright Companies, Inc. (JWright Companies) (collectively referred to as the JWright defendants) alleging breach of contract, negligence, breach of warranty, and negligent and intentional misrepresentation.[1]   The district court granted summary judgment in favor of the JWright defendants, and the Rogers appeal that order on several grounds. We affirm in part and reverse in part.

### ISSUES

[¶2]   The Rogers raise four issues in this appeal:

1.      Whether the district court erred when it granted summary judgment in favor of Mr. Wright on the breach of contract claim.

2.      Whether the district court erred when it granted summary judgment in favor of the JWright defendants on the intentional misrepresentation claim.

3.      Whether the district court erred when it granted summary judgment in favor of the JWright defendants on the negligence claim.

4.      Whether the district court erred when it granted summary judgment in favor of JWright Development on the breach of warranty claim.

### FACTS

[¶3]   On July 8, 2009, the Rogers contracted to buy a home from Mr. Wright that was built in early 2009. The other JWright Defendants were not parties to the contract. The terms of the contract included a representation by Mr. Wright that "[t]here are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public health codes, ordinances, laws, rules and regulations[.]" In the contract, the Rogers acknowledged they were "not relying upon any representations of [Mr. Wright] or [Mr. Wright's] Agents or representatives as to any condition which [the Rogers] deem to

---

[1] The record and the parties' appellate briefs are not clear regarding any relationship between Mr. Wright, JWright Development and JWright Companies, and exactly what role JWright Development and JWright Companies may have played in the building and/or sale of the home. Neither the Complaint nor the Answer described the relationship of these entities, nor did they address why multiple defendants were or were not involved. At oral argument the parties suggested that JWright Development built the home (although that representation was ambiguous at best). However, that is the extent of the information that has been provided to this Court for purposes of this appeal.

1

be material to [the Rogers'] decision to purchase this property[.]" The contract gave the Rogers the right to have inspections performed and provide Mr. Wright with written notice of any defects to the property that he would be responsible for repairing; otherwise, the Rogers were accepting the property in "'as is, where is'" condition without any implied or express warranty by [Mr. Wright] or by any Broker". Although the Rogers allege an inspection performed before closing indicated problems with the residence, it does not appear the inspection was incorporated into the contract or given to Mr. Wright before the closing.

[¶4] Soon after closing on and moving into the house, the Rogers discovered several problems, including cracks in the walls, basement floor, and foundation; leaks in the foundation; improper grading; and the lack of a final electrical inspection of the home. The Rogers attempted to assert a claim on the warranty they allege they received from the JWright defendants. Mr. Wright contacted various professionals to investigate the problems and sent employees (presumably from JWright Development and/or JWright Companies) to the house to make repairs. However, when the JWright defendants did not complete the requested repairs, the Rogers filed a lawsuit alleging breach of contract, negligence, breach of warranty, intentional misrepresentation, and negligent misrepresentation against all of the JWright defendants.

[¶5] The JWright defendants filed a motion for summary judgment requesting the district court dismiss Mr. Wright and JWright Companies from the breach of warranty claim and all JWright defendants from the remaining claims. The district court granted the motion, specifically finding: 1) the Rogers purchased the home in "as is" condition and, therefore, their claim for breach of contract is dismissed; 2) Mr. Wright and JWright Companies were not parties to the warranty and, therefore, the breach of warranty claim against them is dismissed; and 3) the Rogers cannot show they relied upon any representations made by the JWright defendants and, therefore, the claims for negligent misrepresentation, intentional misrepresentation, and negligence are dismissed.

[¶6] Thereafter, the JWright defendants filed an amended motion for summary judgment requesting that JWright Development also be dismissed from the breach of warranty claim. The district court granted the amended motion after determining the contract expressly stated that no warranty existed and there is no evidence that the Rogers provided any consideration to JWright Development for a warranty after the fact.

**STANDARD OF REVIEW**

[¶7] We review summary judgment orders *de novo*. In doing so:

> [w]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Snyder v. Lovercheck*, 992 P.2d 1079, 1083

2

(Wyo. 1999); *40 North Corp. v. Morrell*, 964 P.2d 432, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id*. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id*. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo. 1999); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo. 1994).

*Inman v. Boykin*, 2014 WY 94, ¶ 20, 330 P.3d 275, 281 (Wyo. 2014).

## DISCUSSION

### *Breach of Contract Claim*

[¶8] First, it is worth noting that the Rogers had originally brought a breach of contract claim against all of the JWright defendants. On appeal, however, the Rogers have limited the issue to whether the district court erred when it granted summary judgment in favor of Mr. Wright on the breach of contract claim.[2] Additionally, the Rogers do not appear to dispute the district court's conclusion that Mr. Wright did not breach the contract due to the "as is" clause in the contract. Instead, the Rogers assert there are material facts separate from the "as is" clause the district court failed to consider in reaching its conclusion. The Rogers specifically point out that the contract included a representation from Mr. Wright that there were no "known violations of applicable city, county, and/or state subdivision, zoning, building or public health codes, ordinances, laws, rules and regulations." The Rogers argue there were several code and ordinance violations, including that the house was not built on natural soil or engineered fill, a final electrical inspection was not conducted, and the builder did not reside on the property for two years after construction. The Rogers maintain these violations are material facts supporting a conclusion that Mr. Wright breached the contract. We disagree.

[¶9] When interpreting a contract, we begin by analyzing the document's plain language:

---

[2] The record is clear that only Mr. Wright and the Rogers were parties to the contract. The record offers no explanation of why the Rogers sued entities who were not parties to the contract for breach of contract.

3

> [T]he words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo. 1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.* [*v. Texaco*], 882 P.2d [212,] 220 [(Wyo. 1994)]; *Prudential Preferred Properties* [*v. J and J Ventures*], 859 P.2d [1267,] 1271 [(Wyo. 1993]. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo. 1996).

*Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012) (quoting *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 502 (Wyo. 2011) (alteration in original).

[¶10] The terms of the contract are clear and unambiguous. Section X.A.1 of the contract states:

> A. Seller [Mr. Wright] represents that upon execution of this Contract:
>
> 1. There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public health codes, ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that date[.]

Under the plain language of the contract, a breach does not occur simply because a violation of an applicable code, ordinance, law, rule, or regulation exists. Instead, the terms of the contract are concerned with Mr. Wright's knowledge, and a breach cannot occur unless Mr. Wright **knew** that a violation of an applicable code, ordinance, law, rule or regulation existed at the time the parties executed the contract.

[¶11] "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Throckmartin v. Century 21 Top Realty*, 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo. 2010) (quoting *Christensen v. Carbon County*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo. 2004)). The fact that a code violation existed is not material because the Rogers cannot establish a breach of Section X.A.1 based on that fact alone. Instead, it is Mr. Wright's knowledge of such a violation that would be material. The Rogers have not made any allegations or even suggested that Mr. Wright knew of any

4

violations at the time the parties executed the contract. The Rogers failed to present any fact in opposition to summary judgment indicating that Mr. Wright knew of a code violation when the contract was made. Consequently, based on the undisputed facts presented, the Rogers could not establish that Mr. Wright breached Section X.A.1 of the contract. The district court appropriately granted summary judgment in Mr. Wright's favor on the breach of contract claim.

## *Intentional Misrepresentation Claim*

[¶12] The district court determined that the JWright defendants were entitled to summary judgment on the negligent and intentional misrepresentation claims because the contract contained a disclaimer and merger clause. Section X.B.1 of the contract stated:

> B. Buyer acknowledges and agrees that, upon execution of this Contract:
>
> 1. Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition which Buyer deems to be material to Buyer's decision to purchase this property[.]

The district court concluded that because of this clause, the Rogers could not have relied upon any statements made prior to executing the contract. The Rogers are not appealing the district court's application of the clause to the negligent misrepresentation claim; instead, they argue the district court improperly applied the clause to the intentional misrepresentation claim. Additionally, the Rogers argue the district court failed to take into account the representations made by the JWright defendants' agent, Sam Rex, prior to the closing.

[¶13] In order to prevail on an intentional misrepresentation claim, the Rogers must demonstrate by clear and convincing evidence that "1) the defendant[s] made a false representation intending to induce action by the plaintiff[s]; 2) the plaintiff[s] reasonably believed the representation to be true; and 3) the plaintiff[s] suffered damages in relying on the false representation." *Claman*, ¶ 43, 279 P.3d at 1016; *see also Alexander v. Meduna*, 2002 WY 83, ¶ 8, 47 P.3d 206, 211 (Wyo. 2002). When considering whether clear and convincing evidence has been presented, this Court has recognized:

> Conduct or words which tend to produce an erroneous impression may satisfy the plaintiff's burden. ***In addition, even if someone is not under a duty to speak, if he does speak, he is under a duty to speak truthfully and to make a full and fair disclosure.*** Reliance is reasonable when false representations have occurred prior to the execution of the

> contract which is sought to be avoided or for which damages are sought to be recovered.

*Claman*, ¶ 43, 279 P.3d at 1016 (quoting *Alexander*, ¶ 25, 47 P.3d at 215) (emphasis in original).

[¶14] When one party uses fraudulent or intentional misrepresentations or nondisclosure to induce the other party into a contract, an "as is" clause or disclaimer does not bar the induced party from recovery. *Claman*, ¶ 47, 279 P.3d at 1018; *Alexander*, ¶ 28, 47 P.3d at 216; *Snyder v. Lovercheck*, 992 P.2d 1079, 1084 (Wyo. 1999); *Richey v. Patrick*, 904 P.2d 798, 803 (Wyo. 1995). "'A perpetrator of fraud cannot close the lips of his innocent victim by getting him blindly to agree in advance not to complain against it.'" *Snyder*, 992 P.2d at 1086 (quoting *Baylies v. Vanden Boom*, 40 Wyo. 411, 278 P. 551, 556 (1929)).

[¶15] Consequently, the district court improperly determined the Rogers could not prevail on the intentional misrepresentation claim because of the disclaimer and merger clauses in the contract. However, this Court may affirm a trial court judgment on any proper legal grounds supported by the record. *Snyder*, 992 P.2d at 1086. While the district court improperly determined the disclaimer and merger clauses barred recovery, we will affirm the judgment because the undisputed evidence presented for summary judgment indicated that none of the JWright defendants made any representations to the Rogers before the parties executed the contract or closed on the house.

[¶16] As mentioned above, in order to prevail on an intentional misrepresentation claim, the Rogers must demonstrate the JWright defendants "made a false representation intending to induce action" by the Rogers, the Rogers reasonably believed the representation to be true, and they suffered damages by relying on the false representation. *See Claman*, ¶ 43, 279 P.3d at 1016. In the complaint, the Rogers allege the JWright defendants falsely represented to the Rogers that they were professionals in the home building industry and would provide a house built in accordance with industry standards, the defendants built the house on native soil, and the defendants complied with all state and local rules, ordinances, and regulations when building the house. A review of the record demonstrates there are no genuine issues of material fact regarding the representations made by the JWright defendants to the Rogers. In fact, the record shows the JWright defendants could not have made any false representations to the Rogers in an attempt to induce them into the contract because the undisputed evidence shows the Rogers never communicated with any of the JWright defendants before the parties executed the contract.

[¶17] In Mr. Rogers' deposition, he was asked about his communications with the JWright defendants:

6

Q.    So prior to your signing the contract on July 9, 2009, did you have any communications with any of the JWright defendants?  When I say JWright defendants, I'm using that term collectively to include Jeffrey Wright, JWright Development, LLC, JWright Companies, Inc.

A.    I did not.

Q.    Prior to - - so between the date you signed the contract, July 9, 2009, and the date you closed on your home, July 29, 2009, did you have any communications with any of the JWright defendants?

A.    I did not.

The following exchange took place with Mrs. Rogers:

Q.    Prior to signing the contract to purchase your home on July 9, 2009, did you have any communications with any of the JWright defendants?

A.    No.

Q.    What about after - - after closing on your home on July 29, 2009 - - pardon me.  Prior to closing on your home on July 29, 2009, did you have any communications with any of the JWright defendants?

A.    No.

Q.    In your Complaint you allege that prior to signing the contract on July 9, 2009, to purchase your home that the JWright defendants made certain misrepresentations. Is that correct?

A.    Correct.

Q.    And we went - - we went through certain paragraphs of the Complaint with Mr. Rogers earlier today, and I'd like to do the same with you unless you're telling me that your testimony would be the same as his.

A.    It would be the - - it would be the same.

Q.    Would you like to go through the Complaint?

A.    I think the misrepresentation comes directly in the contract when it said that everything was built to code. That was a representation black and white.

[¶18] Further, Mr. Rogers testified specifically about the alleged representation regarding the home being built on native soil:

Q.    Let me have you take a look at paragraph 20 on page 3 of your Complaint which reads, "These defendants

7

also indicated that the home was built on native soil." How was that representation made to you?

A.    That representation was done - - we got the warranty, one-year warranty. After about nine months there was [sic] a lot of cracks showing up. We had Harry Moore, a structural engineer, licensed PE - -

Q.    My question for you - - and I'm trying to - -

A.    I'm answering the question. Okay. He came up, surveyed the house, said, yes, there's [sic] some settling issues. He wrote a certified letter. He sent that certified mail to Jeff Wright and his defendants. Jeff Wright sent a representative up named Jack Meegen around the 1st of July of 2010, and he stated the house was built on native soil. He said Jeff Wright was not able to attend the meeting and he came in his place.

[¶19] Based upon the Rogers' deposition testimony, it is clear the Rogers cannot demonstrate they relied on any false statements made by the JWright defendants before entering into the contract. Mr. and Mrs. Rogers both unequivocally stated they did not have any communications with the JWright defendants before the closing; therefore, they could not have relied on representations they reasonably believed were true. To the extent the JWright defendants made any representations about the house being built on native soil, Mr. Rogers' deposition testimony demonstrates the statement was made almost a year after the Rogers closed on the home. Therefore, that statement could not have been made with the intent to induce action by the Rogers as they already owned the home. *See Claman*, ¶ 43, 279 P.3d at 1016 ("Reliance is reasonable when false representations have occurred ***prior to the execution of the contract*** which is sought to be avoided or for which damages are sought to be recovered.") (Emphasis added.)

[¶20] The Rogers seem to suggest that genuine issues of material fact exist regarding representations allegedly made by Samuel Rex. In his affidavit, Mr. Rogers asserts that Mr. Rex was the JWright defendants' real estate agent and that he represented the price of the house included a warranty from the seller. This argument is flawed in two ways. First, Mr. Rex was not acting as the seller's agent or the buyer's agent; instead, at the time the parties executed the contract Mr. Rex was acting as an intermediary. The real estate sales contract clearly indicates that the Broker, Uinta Realty Inc. by Samuel W. Rex, was an intermediary and not a Seller's Agent. An intermediary is defined as "a licensee who assists one (1) or more parties throughout a contemplated real estate transaction without acting as an agent or advocate for any party to the transaction[.]" Wyo. Stat. Ann. § 33-28-102(b)(xxviii) (LexisNexis 2015). *See also* Wyo. Stat. Ann. § 33-28-305 (LexisNexis 2015). The Rogers have not alleged that Mr. Rex breached his duties as an intermediary by acting as an advocate or agent for the JWright defendants, and there is no evidence in the record to support that conclusion. Any statement Mr. Rex

8

may have made to the Rogers about a warranty or the condition of the home could not have been made as an agent for the JWright defendants.

[¶21] Further, even if Mr. Rex had acted as the JWright defendants' agent, the Rogers did not adequately plead Mr. Rex's statements as one of the bases of their intentional misrepresentation claim. Rule 9(b) of the Wyoming Rules of Civil Procedure requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." W.R.C.P. 9(b); *Richey*, 904 P.2d at 801 n.2. To comply with the rule:

> . . . the references to 'circumstances' is to matters such as the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby. It is the pleading of these matters with precision that serves the rule's purpose by apprising defendant of the claim against him and of the acts relied upon as constituting the fraud charged. A pleading that simply avers the technical elements of fraud does not have sufficient informational content to satisfy the rule's requirement.

*Johnson v. Aetna Cas. & Sur. Co. of Hartford, Conn.*, 608 P.2d 1299, 1302-03 (Wyo. 1980) (quoting Wright & Miller, Federal Practice and Procedure: § 1297). *See also United States ex rel. Lacy v. New Horizons, Inc.*, 348 Fed.Appx. 421, 424 (10th Cir. 2009) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and [she] must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.") (alteration in original).

[¶22] The allegations in the Complaint clearly assert that the intentional misrepresentations were made by the JWright defendants and referred to the representations that they were professionals in the home building industry, the house was built on native soil, there were no problems with the foundation, and the house complied with state and local rules, ordinances, and regulations. While the Rogers included in the facts common to all claims portion of the Complaint that Mr. Rex told them about a warranty, they never allege that representation was the basis of the intentional misrepresentation claim. Because the Rogers did not plead Mr. Rex's representation as part of the intentional misrepresentation claim in the Complaint, they cannot now rely on the statement to escape summary judgment.

## Negligence Claim

[¶23] Like the intentional misrepresentation claim, the district court dismissed the Rogers' negligence claim because the Rogers could not prove the element of "reliance."

The Rogers argue that conclusion was incorrect because "reliance" is not an element of negligence.

[¶24] The Rogers are correct that "reliance" is not an element of negligence. To prove a negligence claim, the Rogers must show: "(1) the defendant[s] owed the plaintiff[s] a duty of reasonable care; (2) the defendant[s] breached the duty; and (3) the [defendants'] breach was the proximate cause of injury or loss to the plaintiff[s]." *Halvorson v. Sweetwater County School Dist. No. 1*, 2015 WY 18, ¶ 9, 342 P.3d 395, 398 (Wyo. 2015). The district court incorrectly concluded that the Rogers' negligence claim must fail because they could not prove the element of "reliance."

[¶25] The district court's conclusion is understandable considering the way the Rogers pleaded their negligence claim. As mentioned above, the first element of a negligence claim is the existence of the duty of reasonable care. *Id*. In the Complaint, the Rogers allege the JWright defendants' duty arose because of representations the defendants made to the Rogers. Specifically, the Rogers alleged:

> 55. Prior to the execution of [the Rogers'] contract, the [JWright defendants] represented to [the Rogers] that they had personally constructed the residence and that they were professional builders who had the knowledge and experience necessary to complete workmanlike and appropriate building and construction of a new residence.[3]
>
> 56. As a result of this representation, [JWright defendants] owed a duty as to the appropriate and workmanlike construction of the home.

The language in paragraph 55 of the Complaint is phrased in a way that leads one to believe the Rogers were alleging another misrepresentation claim, while the language of paragraph 56 is more akin to an assertion of a legal duty made in negligence claims. Of course, it is not a representation by a builder that creates a duty to build in an appropriate and workmanlike manner. Such a duty exists without regard to any specific representation by the builder, and without regard to any reliance on a representation by a purchaser. Although the Rogers claimed in their Complaint that a duty to build in a reasonable manner arose from their reliance on representations of the JWright defendants, they now assert that such reliance is not part of a negligence claim. Consequently, we must determine if the Rogers even pleaded a negligence claim in their Complaint.

---

[3] As we discussed above, the record clearly shows that the JWright defendants did not make any representations to the Rogers before the contract was signed and the sale completed. In their Answer, the JWright defendants asserted that the Rogers' Complaint violated WRCP 11. Whether the allegations of representations/misrepresentations constitute such a violation is not an issue before us.

[¶26] Wyoming Rule of Civil Procedure 8(a) states: "A pleading which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." W.R.C.P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." W.R.C.P. 8(e)(1). Further, "pleadings shall be so construed as to do substantial justice." W.R.C.P. 8(f). The threshold of specificity under Rule 8 is whether fair notice of the claim has been provided to the opposing party. *Forbes v. Forbes*, 2015 WY 13, ¶ 39, 341 P.3d 1041, 1054 (Wyo. 2015).

[¶27] With respect to negligence claims, "[n]o specification of the facts upon which the conclusion of negligence is based [need be] included." *Id.*, ¶ 40, 341 P.3d at 1054 (quoting *Guggenmos v. Tom Searl-Frank McCue, Inc.*, 481 P.2d 48, 51 (Wyo. 1971)) (alterations in original). Thus, "a legal conclusion need not be supported by factual allegations to comply with Rule 8." *Forbes*, ¶ 40, 341 P.3d at 1054.

[¶28] In the facts alleged in the Complaint, the Rogers stated there were structural defects with the house, including a leaking and sagging foundation and improper grading, and that the differential settlement of the foundation was primarily due to improperly compacted fill below the house. The Rogers further alleged it would cost them over $100,000 to repair the defects to the house. In the negligence claim specifically, the Rogers name the claim: COUNT II --- NEGLIGENCE (JWRIGHT DEFENDANTS). Within that count, the Rogers explain the JWright defendants "owed a duty as to the appropriate and workmanlike construction of the home," and then go on to allege that the JWright defendants breached that duty by failing to provide workmanlike and appropriate construction of the house, and not building the house in accordance with industry standards and state and local law. Finally, the Rogers claim the JWright defendants' breach of that duty was the proximate and direct cause of the damages.

[¶29] All of these facts and allegations are consistent with a negligence claim. The problem with the Complaint is that the Rogers state the duty arose from *representations* made by the JWright defendants instead of the duty arising as a matter of law. *See Moxley v. Laramie Builders, Inc.*, 600 P.2d 733, 736 (Wyo. 1979) ("A builder of a home is also liable for damages which are foreseeable and which are caused by his negligence, to subsequent purchasers of such a home with whom he has no contractual relation even though his work is accepted by the first owner before the damage became manifest."). We find that statement not fatal to the negligence claim. The negligence claim was pleaded separately from the negligent and intentional misrepresentation claims, indicating it was a different cause of action. While the Rogers certainly should have provided a more accurate statement of the claim, the facts and allegations provided gave the JWright defendants fair notice of the allegation that they negligently breached their duty to build the house in a workmanlike, appropriate and reasonable manner. *See Forbes*, ¶ 42, 341 P.3d at 1054-55.

11

[¶30] The JWright defendants also argue they are entitled to summary judgment on the negligence claim because of the economic loss rule.[4] "The 'economic loss rule' bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property. The purpose of the 'economic loss rule' is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles." *Rissler & McMurry v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234-35 (Wyo. 1996). The law of contracts is designed to protect the expectations bargained for in a contract, while tort law protects persons and property from losses resulting from injury. *Id*. at 1235. As pointed out in *Rissler*, the rule is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *Id*. at 1235 (quoting *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F.Supp. 1549, 1557 (D.S.C. 1993)). The rule, however, does not apply in all tort claims alleging only pecuniary damages; "tort liability may still be premised on a duty independent of contractual duties." *Excel Constr., Inc., v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 19, 228 P.3d 40, 46 (Wyo. 2010).

[¶31] The JWright defendants assert the holdings in *Rissler* and *Excel* stand for the proposition that the economic loss rule prevents recovery for any tort claim grounded in negligence if the damages are solely economic. That interpretation of our precedent is misplaced. In *Rissler*, we held that "when the plaintiff has contracted to protect against economic liability caused by the negligence of the defendant, there is no claim under Restatement of Torts (Second) [] § 552 [(negligent misrepresentation)] for purely economic loss." *Rissler*, 929 P.2d at 1235. In *Excel*, we explicitly stated that "[r]ecovery on a tort theory requires a showing that a duty independent of contract was violated." *Excel*, ¶¶ 19, 31, 228 P.3d at 46, 48. In both *Rissler* and *Excel*, application of this rule resulted in the dismissal of negligent misrepresentation and negligence claims. *See Rissler*, 929 P.2d at 1234, 1235; *Excel*, ¶ 18, 228 P.3d at 46.

[¶32] While the negligence based claims in those cases could not escape application of the economic loss rule, this will not always be the case. In *Rissler*, the Court acknowledged that "there may be circumstances under which purely economic damages may be a basis for an action under Restatement of Torts (Second) [] § 552. . . ." *Rissler*, 929 P.2d at 1235. Restatement of Torts (Second) § 552 discusses the elements of a *negligent* misrepresentation claim. Further, when discussing the negligence claims in *Excel*, the Court pointed out that in *Rissler* it had declined to apply the economic loss rule to all tort claims alleging solely pecuniary harm and that "tort liability may still be premised on a duty independent of contractual duties." *Excel*, ¶ 19, 228 P.3d at 46.

---

[4] The JWright defendants made this argument in the motion for summary judgment; however, the district court did not rely on the rule as the basis for granting the motion. In their brief, the JWright defendants point out this Court's authority to affirm a district court "on other grounds." *Corkill v. Knowles*, 995 P.2d 438, 439 (Wyo. 1998).

12

Thus, the salient question is not whether the tort claim is based in negligence, but whether a tort duty exists independent of any duties established in a contract. *See id.*

[¶33] In Wyoming, home builders and developers have an independent duty of care when building new homes. In *Tavares v. Horstman*, 542 P.2d 1275 (Wyo. 1975), this Court held that, as a matter of law, new homes carry an implied warranty that the builder constructed the home in a reasonably workmanlike manner and it is fit for habitation. *Id.* at 1282. Additionally, this Court determined that a home buyer could also proceed upon the basis of negligent design and construction. *Id.*

[¶34] In *Moxley*, 600 P.2d 733, the existence of the implied warranty and negligent building protections was extended to subsequent purchasers of homes who never had a contractual relationship with the builder. *Id.* at 736. The Court explained:

> The purpose of a warranty is to protect innocent purchasers and hold builders accountable for their work. With that object in mind, any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible. . . No reason has been presented to us whereby the original owner should have the benefits of an implied warranty or a recovery on a negligence theory and the next owner should not simply because there has been a transfer. Such intervening sales, standing by themselves, should not, by any standard of reasonableness, effect an end to an implied warranty or, in that matter, a right of recovery on any other ground, upon manifestation of a defect. The builder always has available the defense that the defects are not attributable to him.

*Id.* With respect to the warranty claim, the Court limited recovery to latent defects which become manifest after the purchase; however, a builder is liable in negligence for damages which are foreseeable. *Id.*

[¶35] *Tavares* and *Moxley* establish a tort duty of reasonable care upon home builders and a breach of that duty will result in the builder being liable for foreseeable damages resulting from the negligent construction of the home. *Tavares*, 541 P.2d at 1282; *Moxley*, 600 P.2d at 736. This duty is independent of any duties that arise from a contractual relationship because a contract need not exist in order for the tort duty to exist. *Moxley*, 600 P.2d at 736 (builder liable to home buyer with whom he has no contractual relationship, even though the work was accepted by the first owner). Therefore, the economic loss rule does not prevent the Rogers from bringing a negligence claim against the home builder in this instance despite the fact that the damages are solely economic or pecuniary in nature. *Excel*, ¶ 19, 228 P.3d at 46.

[¶36]  This application of an independent tort duty and the economic loss rule has been applied similarly in other jurisdictions.  In *Kennedy v. Columbia Lumber and Manufacturing Co.*, 384 S.E.2d 730 (S.C. 1989), the South Carolina Supreme Court recognized a legal duty of a builder to comply with building codes and industry standards, and refrain from constructing housing that he knows or should have known will pose serious risks of physical harm.  *Id*. at 737; *see also Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49 (S.C. 2009).  That duty extends to "foreseeable parties."  *Kennedy*, 384 S.E.2d at 737.  The court reasoned that "[a] builder is no less blameworthy in such a case where lady luck has smiled upon him and no physical harm has yet occurred."  *Id*.  For that reason, the court determined a negligence claim can be pursued against a builder no matter the type of damages, but the economic loss rule will still apply when duties are created solely by contract.  *Id*.

[¶37]  In *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983), the Colorado Supreme Court held that a home builder has a duty to act without negligence in the construction of a home, independent of any contractual obligations, and that duty extends to subsequent purchasers who were unable to discover latent defects prior to the purchase.  *Id*. at 1042-43.  In reaching this conclusion, the court relied upon our decision in *Moxley*.  *Id*. at 1044.  However, the court limited recovery to latent or hidden defects which manifested after the purchase and which were not discoverable through a reasonable inspection.  *Id*. at 1045.  The court reasoned:  "Often a buyer is willing to accept certain deficiencies in a house in exchange for a lower purchase price.  However, a buyer cannot be expected to discover structural defects which remain latent at the time of purchase."  *Id*. at 1045-46.  Thereafter, in *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc*., 114 P.3d 862 (Colo. 2005), the court specifically stated that, while Colorado applies the economic loss rule, it does not apply in negligent home construction cases because of the independent duty established in *Cosmopolitan Homes*.  *Id*. at 866; *see also Grattis v. McNutt (In re Estate of Gattis)*, 318 P.3d 549, 553 (Colo. Ct. App. 2013).

[¶38]  While the economic loss rule does not prevent the Rogers from bringing a negligence claim against the builder in this circumstance, we are compelled to recognize that an "as is" clause in a home buyer's contract still constitutes an effective waiver of any implied warranties against the seller.  *Greeves v. Rosenbaum*, 965 P.2d 669, 673-74 (Wyo. 1998).  Although *Tavares* and *Moxley* discarded the common law doctrine of caveat emptor in the sale of homes, that protection does not allow purchasers to ignore their negotiated bargain and responsibilities.  *Id*. at 674.  In *Greeves*, the homebuyers chose not to take advantage of their right to have the premises inspected before purchasing the house, and they were forced to suffer the consequences of that decision when they later discovered problems with the house.  *Id*. at 673-74.  Importantly, the contract was between the homebuyers and the home builder.

14

[¶39] Here, like in *Greeves*, the contract contained an "as is" clause. However, the Rogers did not contract with the other JWright defendants, but instead contracted with and purchased the house from Mr. Wright, as an individual. Therefore, the "as is" contract waives any liability for defects against Mr. Wright. JWright Development and JWright Companies were not parties to the contract; therefore, the Rogers did not waive any potential causes of actions against those entities.

[¶40] For these reasons, we find the district court improperly granted summary judgment in favor of all of the JWright defendants with regard to the negligence claim. Although the record is not clear, it appears Mr. Wright, individually, did not build the home; therefore neither a negligent construction nor a breach of implied warranty of habitability claim would lie against him. Even if he were the builder, the "as is" clause in the contract waives any claims regarding defects in the home against him. *See Greeves*, 965 P.2d at 673-74. While it is unlikely that **both** JWright Development and JWright Companies are actually the builder of the home as the Rogers allege, that issue will be sorted out through further discovery or during the trial. However, if either of those defendants were, in fact, the home builder, that defendant had an independent duty of reasonable care not to build the home in a negligent manner and that duty makes the economic loss rule inapplicable.

### Breach of Warranty Claim

[¶41] The Rogers argue the district court erroneously granted summary judgment in favor of JWright Development on the breach of warranty claim. At the outset, it is important to clarify exactly what the Rogers are arguing on appeal. First, while the Complaint directed the breach of warranty claim against all JWright defendants, the Rogers are clearly alleging the district court erred in granting summary judgment in favor of only JWright Development. Second, based upon the allegations in the Complaint, the Rogers are asserting that JWright Development provided them with an express warranty. Further, the Rogers attached the alleged warranty to the Complaint, and it mentions only JWright Development. At oral argument, the Rogers' counsel unequivocally stated that the Rogers were not bringing a claim for a breach of the implied warranty of habitability.

[¶42] With these facts in mind, we first turn to the Rogers' assertion that JWright Development waived the portion of the contract that expressly stated the Rogers were accepting the property in "as is, where is" condition and without any express or implied warranties. The Rogers claim that because JWright Development provided the Rogers with a warranty form and made some repairs to the home after the closing, JWright Development waived its right to enforce the no warranty clause in the contract.

[¶43] A party to a contract may waive its rights provided in the contract if the following elements exist: (1) there is an existing right provided by the contract; (2) the waiving party has knowledge of that right; and (3) the waiving party has the intent to relinquish

15

that right.  *Scherer v. Schuler Custom Homes Constr., Inc.*, 2004 WY 109, ¶ 16, 98 P.3d 159, 163 (Wyo. 2004).  The purpose of the waiver doctrine is to "prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then either suing for noncompliance or demanding compliance for the purpose of avoiding the transaction."  13 Richard A. Lord, *Williston on Contracts* § 39:15 (4th ed. 2013).

[¶44]  The overriding problem with the Rogers' argument is their contract was with Mr. Wright—not JWright Development.  Because JWright Development was not a party to the contract, its actions cannot waive any of the provisions.  Granted, Mr. Wright, who apparently is involved in JWright Development, is a party to the contract; however, the Rogers have not appealed the district court's granting of summary judgment in favor of Mr. Wright on this issue and we decline to consider whether Mr. Wright's actions had any bearing on the contract after closing.

[¶45]  The Rogers also argue that JWright Development's actions created an implied-in-fact contract.  "[A]n implied-in-fact contract arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words."  1 Richard A. Lord, *Williston on Contracts* § 1:5 (4th ed. 2013).  When determining whether an implied-in-fact contract exists:

> [W]e look not to the subjective intent of the parties, but to " 'the outward manifestations of a party's assent sufficient to create reasonable reliance by the other party.' "  *Givens v. Fowler*, 984 P.2d 1092, 1095 (Wyo. 1999) (quoting *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 990 (Wyo. 1991)).  The question is "whether a reasonable man in the position of the offeree would have believed that the other party intended to make an offer."  *Boone* [*v. Frontier Ref.*, 987 P.2d 681 at 687 (Wyo. 1999)].

*Symons v. Heaton*, 2014 WY 4, ¶ 9, 316 P.3d 1171, 1174 (Wyo. 2014) (quoting *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 16, 75 P.3d 640, 649 (Wyo. 2003)).  While the agreement is not written, the parties must still provide "proof of the same elements necessary to evidence an express contract:  mutual assent or offer and acceptance, consideration, legal capacity, and a lawful subject matter."  Lord*, supra*.

[¶46]  The Rogers assert there are genuine issues of material fact that exist regarding whether an implied-in-fact contract exists and that a jury should determine whether each of the elements are present.  The Rogers state that JWright Development's conduct and the fact that the "for sale" sign posted in front of the house stating there was a warranty would lead a reasonable person to believe a warranty existed.  Additionally, the Rogers provided a written warranty they claim was provided by JWright Development.  Finally,

the Rogers contend that the purchase of the home was sufficient consideration for the implied-in-fact contract with JWright Development.

[¶47]  While the presentation of the written warranty paperwork, the representation of a warranty on the "for sale" sign, and JWright Development's conduct could arguably be perceived as conduct the Rogers reasonably relied upon, the Rogers cannot show there are material facts in dispute regarding whether they provided consideration for an implied-in-fact contract.  Consideration means that "a legal detriment has been bargained for and exchanged for a promise." *Moorcroft State Bank v. Morel*, 701 P.2d 1159, 1161-62 (Wyo. 1985) (quoting *Miller v. Miller*, 664 P.2d 39, 40 (Wyo. 1983)).  The Rogers argue that by purchasing the home they gave consideration for the warranty.  However, the Rogers did not buy the home in exchange for the promise of a warranty from JWright Development.  The Rogers' contract with Mr. Wright specifically stated there were no express or implied warranties included in the sale of the house.  Further, in his affidavit, Mr. Rogers stated that he did not obtain the written warranty paperwork until after the parties had closed on the house.  In his deposition, when asked what value he gave in exchange for the warranty paperwork he stated, "None."

[¶48]  The undisputed facts of this case demonstrate that perhaps the Rogers mistakenly believed their new house included a warranty.  But, we cannot ignore the plain language of the contract which clearly states the Rogers were purchasing the home from Mr. Wright without any express or implied warranties.  While JWright Development may have made repairs to the house that would normally be covered by a warranty, this conduct did not create an implied-in-fact contract.  In order to create a valid implied-in-fact contract, the Rogers were required to give consideration for the warranty.  Mr. Rogers stated that he gave JWright Development nothing of value in exchange for the warranty packet.  Therefore, the district court properly granted summary judgment in favor of JWright Development.

**CONCLUSION**

[¶49]  The district court properly granted summary judgment in favor of the JWright defendants on the breach of contract, intentional misrepresentation, and breach of warranty claims, and we affirm the district court's order to that extent.  However, the district court erroneously granted summary judgment in favor of JWright Development and JWright Companies on the negligence claim.  The builder of the home has a legal duty to build the home in a reasonable and workmanlike manner, and there are issues of material of fact in dispute regarding whether the builder (whoever that was) breached that duty.  Therefore, we reverse the district court's order on the negligence claim and remand for further proceedings consistent with this opinion.